P. O. LOFTIN ET UX *v.* MRS. GRACE GOZA

5-4428                                              425 S. W. 2d 291

Opinion delivered March 18, 1968

*Chambers & Chambers,* for appellants.

*J. S. Brooks*, for appellee.

Lyle Brown, Justice. Mrs. Grace Goza brought this action in ejectment to obtain possession of a small strip of boundary land and against the contiguous landowners, P. O. Loftin and wife. The Loftins defended on a claim of title by adverse possession. The Loftins appeal from the finding of the chancellor that adverse possession was not established.

Appellee Goza is the record owner of the involved forty acres, less some two acres in the southwest corner which is owned by appellants, the Loftins. The dispute as to the location of the common boundaries seems to stem from an erroneous call in the Loftins' deed. Because of that error P. O. Loftin ordered a survey which utilized a description from a "county map." (We presume that map to be an ownership map prepared by some surveyor and utilized for reference by courthouse officials, abstractors, and attorneys.) The north boundary line, as determined by that survey, was not satisfactory to Loftin, so he moved that line farther north. There he established a new fence on what he alleges to have been an old fence line existing since 1948.

Mrs. Goza subsequently employed the county surveyor to fix the Loftin line, using the description in the Loftin deed. Surveyor Methvin described the erroneous call on the north boundary line as an error that is commonly found in old deeds. However, he testified those mistakes are corrected by harmonizing the entire metes and bounds description. The Methvin survey reduced the Loftin acreage on the east and north sides as fixed by the "county map" description.

As a result of the confusion in record title, Loftin built a new fence on the east and north sides. On the east he followed the county map line which he claimed corresponded to an old fence line, a continuation of the same 1948 fence which he said existed on the north side.

Mrs. Goza claimed the new fence encroached on her record title and denied the existence of an old fence on the two boundaries.

The confusion created by the Loftin description is helpful only to an understanding of the background of the litigation. The trial court accepted the Methvin survey as the true boundary line. The Loftins claim by adverse possession the lands lying north and east of the Methvin survey and up to the new fence. The single issue on appeal is whether the Loftins sustained their claim of adverse possession.

It would serve no useful purpose to detail the testimony of the twelve witnesses, who were equally divided between the parties. The testimony for the Loftins was directed toward their assertion that at the time of their purchase they were shown a boundary fence on the north and east sides; that the fence has been in existence since 1948; and that they had always treated the old fence as the line. The same number of witnesses testified for Mrs. Goza. Their testimony tended to support the positive testimony of Mr. Goza. He was born and reared on these lands. His mother deeded him the tract north and east of the Loftins in 1951 and he deeded it to his wife in 1961. Goza no longer lives on the property; he does live nearby and is on the land frequently. It was his testimony that the old fence to which Loftin and his witnesses testified was never in existence.

For reversal, appellants here urge that "the evidence is crystal clear" that the old fence existed continuously since 1948. Numerically, the greater number of witnesses gave positive testimony of the existence of an old fence. But the greater weight of the evidence is not determined by the number of witnesses testifying to a controverted fact. That is merely an element to be considered. Just as important is the credibility of the witnesses. In that respect the chancellor is in much better position to evaluate credibility than the appellate

court. It is apparent that the litigants had a "falling out" over this dispute. In that situation the vantage point of the chancellor is all the more important. See *Siebert* v. *Benson,* 243 Ark. 843, 422 S. W. 2d 683 (1968). Evidently the trial court was unusually conscious of *credibility* because in his findings he commented on the demeanor and credibility of the witnesses.

Appellants stress the fact that the majority of their witnesses gave positive testimony as to the existence of the old fence. They compare that evidence with the negative testimony of a majority of appellee's witnesses, "negative" in the sense that the latter witnesses could not remember having seen an old fence on the east line. Those witnesses showed years of familiarity with the property, including the existence of "patch" and "cross" fences. One answer to appellants' argument that we should accept the positive over the negative is that ofttimes positive testimony is over-positive, so much so that its credibility is affected. The recollection of dates and unimportant experiences in years past is a common example. The opportunity to evaluate positive testimony is mainly at the trial level. There the trial judge sizes up the witness, utilizing the numerous factors that are available only to one who hears and observes that witness.

Some of the testimony of appellants' positive witnesses was not so favorable to their claim of adverse possession. For example, P. O. Loftin gave testimony inconsistent with the required intent to claim beyond the true boundary. When the controversy arose over the building of the new fence, Loftin testified he told Goza he (Loftin) wanted no part of the Goza property—only those lands which he had bought. In that conversation, which was prior to any survey, Loftin said he offered to abide by the conclusions of any surveyor of Goza's choice. He concluded that line of testimony with this statement: "Since Mr. Goza has sued me and caused me to come to court, I will claim everything under fence."

.

The recited testimony could well have raised in the mind of the trial court a serious question as to just when Loftin formed an intent to claim beyond his true record boundary.

It is axiomatic that one claiming title by adverse possession as against a record title has the burden of establishing it by a greater weight of the evidence. In view of that burden, we are unable to say the chancellor's findings were against the greater weight of the evidence.

Affirmed.

BYRD, J., dissents.