Mr. and Mrs. Vernie LANGLEY Jr.
*v.* Dale Allen DENTON

78-25                                          568 S.W. 2d 19

Opinion delivered July 10, 1978
(In Banc)

*Wheeler, Watkins, Graham & Wyrick,* by: *Kelvin Wyrick,* for appellants.

*McMillan, Turner & McCorkle,* by: *H. W. McMillan,* for appellee.

CONLEY BYRD, Justice. The plaintiff and the defendant were divorced on August 15, 1974, at which time a property settlement was reached and it was agreed that Patricia Denton would have custody of the two children, Michael Denton and Jennifer Denton, and that neither party could take the children out of the State of Arkansas without prior approval of the court.

Subsequent, thereto, the plaintiff, Patricia Denton, married Jerry Sossamon and established a residence in Mesquite, Texas, and asked that she be permitted to take the two minor children with her to her residence there.

On December 27, 1974, the court in granting the plaintiff permission to take the children to Texas, required that the plaintiff make a bond in the sum of $1,000.00 with her parents, Mr. and Mrs. Vernie Langley, Jr., as sureties, which was done. The order entered provided:

"4. Patricia Denton Sossamon shall deliver the children to the Defendant, Dale Allen Denton, at his home in Clark County, Arkansas, on the Sunday afternoon one week after the closing of school, where they shall remain until the Sunday two weeks before school shall start. During this summer visitation Patricia Denton Sossamon shall have the right to visit her children on every other weekend and Dale Allen Denton shall not be required to pay any support money."

Thereafter on May 29, 1975, the plaintiff, Patricia Denton Sossamon, appeared with her husband, Jerry Sossamon, before the court in Arkadelphia, Arkansas, accompanied by her attorney, Travis Mathis, and her parents, Mr. and Mrs. Vernie Langley, Jr. This appearance was without notice to

the defendant who had no opportunity to appear and be heard.

The court made the following docket entry:

"5-29-75 Mr. and Mrs. Sossamon before court. The older child needs to get special reading course at Garland, Texas, and court thinks he should be permitted to do this. Both children be left with the father today until June 8, hopefully Mr. Denton will agree, keep the girl and let the boy (go) and if a hearing is necessary will be held June 12."

After the entry of the docket notation, Mrs. Sossamon called and told appellee that she had a court order to permit the boy to go to school and she didn't think it would be right to split the children and appellee reluctantly agreed not to split the children.

Dale Allen Denton on August 15, 1975, learned that school in Garland, Texas, would open on Monday, August 18, 1975, and therefore, it would be completely impossible for him to have his children visit with him before school started. With this information he advised the court and upon instruction of the court summons was issued for Mr. and Mrs. Langley and Mrs. Sossamon.

Mr. Travis Mathis, attorney for the plaintiff, was notified and a hearing was had before the court on August 19, 1975, at which time Mr. and Mrs. Langley appeared in court. Mr. Langley testified and Mr. Mathis advised the court, as did Mr. Langley, that they were unable to communicate with Mrs. Patricia Denton Sossamon and did not know how to get in touch with her by telephone. The court was further advised that no one knew when the special school had been out.

After the hearing and apparently during the afternoon of August 19, 1975, Mr. Mathis wrote a letter to the court, that the school got out July 25.

On August 19, 1975, the court on its own motion inquired of the Superintendent of Schools at Garland, Texas, when the special class ended and was advised it ended July 25th.

In the latter part of 1976, appellee had some financial difficulties and got behind on his child support.

April 28, 1977, Jerry West Sossamon and Patricia Lou (Denton) Sossamon filed Suit No. 77-360 JUV 2 in the Juvenile Court of Dallas County, Texas, seeking to have the parent-child relationship between Dale Allen Denton and his minor children, Michael Allen Denton and Jennifer Lenea Denton, terminated. May 6, 1977, appellee filed the present petition to forfeit the bond. Summons was served on Mr. and Mrs. Langley and Travis Mathis was notified of the filing of the petition.

On May 19, 1977, at Dale Allen Denton's request and without notice the court reaffirmed that "at all times (it had) retained jurisdiction of this cause."

On June 3, 1977, upon motion of Patricia Denton (Sossamon) by her attorney, W. Kelvin Wyrick, and without notice to defendant, the court held that its order of May 19, 1977, was not to be construed as an attempt to prevent the Texas Court from properly (performing its duty) under the Texas law proceeding.

On June 10, 1977, the Juvenile Court of Dallas County, Texas, entered an order that "the petitioners Jerry Wayne Sossamon and Patricia Denton Sossamon and the Respondent Dale Allen Denton are all hereby restrained and enjoined from removing Michael Allen Denton and Jennifer Lenea Denton . . . from the jurisdiction of this court until such further orders of this court or until such time as the above styled and numbered cause has been disposed of."

August 23, 1977, Travis Mathis notified appellee and the court that he did not represent Mrs. Sossamon. On that day appellee notified Mrs. Sossamon by registered mail, return receipt requested, of the hearing on this petition to forfeit the bond. The registered letter was returned marked "Refused."

Mr. Langley testified that Mr. Mathis had been employed to represent Mrs. Sossamon before the petition to forfeit the bond was filed and that he had loaned her the $300 to pay her attorney's fee. Mr. Langley acted as Mrs.

Sossamon's conduit in firing Mr. Mathis and accepting the refund of the $300 fee previously paid. Mr. Langley could not place the time of the firing of Mr. Mathis but stated that it was after he employed Mr. W. Kelvin Wyrick.

Appellee testified that Mrs. Sossamon had again changed her telephone number to an unlisted number and that he was unable to contact either Mrs. Sossamon or his children by phone. He also introduced a box, containing a birthday present for the boy and some money for the daughter, that had been returned marked "refused."

At the hearing on the bond forfeiture the court found:

"a.   That the Chancery Court of Clark County, Arkansas has had continuing jurisdiction of these children and the subject matter of this litigation at all times since the filing of the original petition for divorce.

"b.   That the purpose of the bond was to prevent the Defendant, Dale Allen Denton, from having to go into Texas to defend any litigation or to take any legal action to protect his rights to his children; but if he had to do so to enforce his rights under this court's decree to use the bond proceeds to help defray his expense as set out in *Herring* v. *Nyle Morton*, 248 Ark. 718.

"c.   The plaintiff, Patricia Denton Sossamon, well knew this, and her action in proceeding in the Texas Juvenile Court and having the court issue a restraining order or creating a situation where the court might issue such restraining order, was in direct and strict violation of the orders of this court.

"d.   That the Plaintiff, Patricia Denton Sossamon, has at all times known of the proceedings in this court and has apparently sought in every way possible to avoid the jurisdiction of this court. Well knowing that she was placing her parents in a position of a possible bond forfeiture. The same attorney, who appeared specially for her before this court on June 3, 1977, now represents Mr. and Mrs. Vernie Langley and professes not to represent her. She has sought by devious means to avoid carrying out the orders of this court giving the

Defendant, Dale Allen Denton, the right to see and visit with his children; but she has used this court when it served her purposes.

"For these reasons the bond of December 27, 1974, is forfeited and Patricia Denton Sossamon, Mr. Vernie Langley, and Mrs. Vernie Langley, are ordered to pay said $1,000.00 into the Registry of this court within two weeks from this date."

Mr. and Mrs. Langley have appealed raising the issues hereinafter discussed.

POINT I.   Appellants contend that the forfeiture of the bond was error because the Chancery Court had not ordered Patricia Denton Sossamon to appear for any hearing. We find no merit to this contention. The order permitting Mrs. Sossamon to remove the children from the jurisdiction of the court provided:

> "1.   Patricia Denton shall make a bond in the sum of One Thousand ($1,000) Dollars with her parents, Mr. & Mrs. Vernie Langley, Jr. as sureties which bond shall guarantee that Patricia Ann Denton shall return the children to the jurisdiction of this Court at any and all times which this Court may require.
>
> * * *
>
> 4.   Patricia Denton Sossamon shall deliver the children to the defendant, Dale Allen Denton at his home in Clark County, Arkansas on the Sunday afternoon one week after the closing of school where they shall remain until the Sunday two weeks before school shall start. . . ."

The bond executed by Mr. and Mrs. Denton and Mrs. Sossamon provides: "We, Mary Langley and Vernie Langley, Jr. . . . hereby bind ourselves in the penal sum of One Thousand ($1,000) Dollars, if our daughter, Patricia Langley Denton Sossamon, does not fully abide by the orders of this court, made this 27th day of December, 1974." Furthermore, at the time of the hearing held on September 6,

1977, it was admitted by all parties that Mrs. Sossamon had not complied with the visitation provisions of the December 27, 1974 order for the summer of 1977. Since the purpose of bonds, such as here involved, is for the use and benefit of the party litigant in enforcing the decree of the court in any jurisdiction where the children may be found, *Herring* v. *Morton*, 248 Ark. 718, 453 S.W. 2d 400 (1970), the Texas order in the suit instituted by Mrs. Sossamon is not a defense to a bond forfeiture petition.

POINT II. We find no merit to the contention that there was no service of process issued to Mrs. Sossamon. The record indicates that she had Mr. Travis Mathis employed to act in her behalf relative to the custody of the children at the time appellee's petition was filed and served upon him. However, if we assume that he was not employed to accept service of appellee's motion, the record still shows that appellants' present counsel appeared specially in this matter to get an exparte order after appellee's petition was filed and that on August 23, 1977, Mrs. Sossamon was served by registered mail, return receipt requested, which was refused. Furthermore, it would appear that she had some contact with appellants after the filing of the petition for arrangements were made to get a refund of the fee from Mr. Mathis. Furthermore, since appellants had ample notice of the petition by way of summons, we know of no law that requires notice upon Mrs. Sossamon before the penalty of their bond can be invoked against them as sureties.

POINT III. Appellants' contention that it was error to hold Mrs. Sossamon responsible for the issuance of the Texas restraining order has no merit. The Texas decree which arose as a result of Mrs. Sossamon's own act in filing the Texas action cannot be used as an excuse to prevent a forfeiture of the bond. As pointed out above, the purpose of the bond was to assist appellee in going into a foreign jurisdiction to defend such litigation.

POINT IV. Appellants' suggestion that the court did not adjudicate that its order had been violated has no merit in view of the trial court's finding that Mrs. Sossamon "has sought by devious means to avoid carrying out the orders of this court giving the Defendant, Dale Allen Denton, the right

to see and visit with his children, but she has used this court when it served her purposes."

POINT V. Appellants contend that the filing of the termination suit in the Texas Court was not a violation of the Clark Chancery Court order. The issue before the trial court was whether Mrs. Sossamon had failed to comply with the orders of the Clark Chancery Court which permitted her to take the children into Texas in the first place and as pointed out by the trial court the purpose of the bond executed by appellants was to prevent the appellee from having to go into Texas to defend any litigation or to take any legal action to protect his rights but that if he had to do so to enforce his rights under the court's decree then he had a right to use the bond proceeds to help defray his expenses. In so far as the issues on the bond forfeiture were concerned, we cannot say that the trial court erred in finding that filing of the Texas suit was a violation of the court's order to the extent that appellee could use the bond proceeds to defend the Texas action.

Affirmed.

GEORGE ROSE SMITH, FOGLEMAN and HICKMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree with the trial court's holding that the purpose of the bond was to prevent appellee from having to go into another jurisdiction to defend any legal action or to protect his rights in regard to his children. We did not so hold in *Herring* v. *Norton*, 248 Ark. 718, 453 S.W. 2d 400. We said that the purpose of the bond was to insure compliance with the orders of the court and to give some security to the parties litigant. We simply held that, upon forfeiture of the bond, its proceeds should not go into the county treasury, but should be held in the registry of the court for the use and benefit of the parties litigant in enforcing the decree of the court in any jurisdiction where the minor might be found. But now, in spite of our language in *Herring,* the majority sustains the trial court's misinterpretation of that opinion.

Furthermore, there was no evidence upon which the trial court could have found that Patricia Denton Sossaman had the court in Texas issue a restraining order or that the mere filing of a proceeding for termination of parental relation in a court in the state where the minor children spend most of their time and where their custodial parent now lives, was a violation of the orders of the Arkansas courts, even though such a court, for the protection of its own jurisdiction might, in such a case, issue an order preventing the removal of the children from that state. Presumably, the state of Texas is much more concerned today with the welfare of these children than any other state, because the children are now, in effect, wards of that state.

Saying that the order of the Texas court is no defense to the bond forfeiture provision actually does what the trial court said it had no intention of doing, i.e., "prevent the Texas court from properly (performing its duty) under the Texas law proceeding."

The end result of the holding today places Arkansas in the posture of saying that because our courts retain jurisdiction over children of a broken marriage, a custodial parent dare not invoke the jurisdiction of any other court. The idea of such exclusivity of jurisdiction should not even be entertained.

I am authorized to state that Mr. Justice George Rose Smith and Mr. Justice Hickman join in this opinion.