Robert MAYHEW *v.* Doyle LOVELESS

CA 80-401                                613 S.W. 2d 118

Court of Appeals of Arkansas
Opinion delivered March 25, 1981

*R. W. Laster* and *Arnold N. Goodman*, for appellant.

*W. J. Walker*, for appellee.

MELVIN MAYFIELD, Chief Judge. This case arises out of a conditional sales contract by which Loveless sold a tractor-trailer rig to Mayhew for $8,250 and the assumption of two monthly payments Loveless was making on the rig. After about a year Mayhew got behind in his payments and Loveless repossessed the rig and disposed of it without giving Mayhew the notice required by the Uniform Commercial Code. Mayhew filed suit against Loveless seeking rescission of the contract and in the alternative asked, by amendment, for damages for failure to comply with the provisions of the code. There was a counterclaim by Loveless for a repair bill and some insurance premiums which he alleged he paid for Mayhew but there was no claim for a deficiency under the sales contract.

The chancellor found against Mayhew and gave Loveless judgment for $1,497.95 on his counterclaim. Mayhew has appealed and the only point relied upon is stated as follows:

The chancellor erred in holding that the appellant was not entitled to recover the value of the collateral, less the debt owed thereon, where appellee failed to comply with the provisions of the Uniform Commercial Code, Ark. Stat. Ann. § 85-9-101, et seq.

Under Ark. Stat. Ann. § 85-9-504 (Supp. 1979) the code allows a secured party, after default, to dispose of the repossessed collateral and apply the proceeds first to the reasonable expenses of retaking and selling and then to the satisfaction of the secured indebtedness. The section goes on to provide that the creditor must account to the debtor for any surplus and that the debtor is liable for any deficiency. It also provides that disposition of the collateral may be by public or private proceedings but requires that every aspect of the disposition must be commercially reasonable and that (with exceptions not applicable in this case) "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale." As White & Summers, *Uniform Commercial Code* (2d ed. 1980) 1109 says, "The notice requirement is easy to understand and to apply; it is inspired by the forlorn hope that the debtor if he is notified, will either acquire enough money to redeem the collateral or send his friends to bid for it." See also, *Wheeless* v. *Eudora Bank*, 256 Ark. 644, 509 S.W. 2d 532 (1974).

In this case there was no attempt to comply with the notice provisions of the code and there is no evidence that they were waived. Mayhew was behind in his payments and Loveless simply obtained peaceful possession of the rig and without notification of any kind eventually swapped the tractor for another tractor and the trailer for another trailer. Ark. Stat. Ann. § 85-9-507 (1) (Supp. 1979) provides if the

repossessed security is not disposed of in accordance with the requirements of the code, the debtor has a right to recover any loss caused by the failure to comply. How "loss caused by the failure to comply" is to be measured has been the subject of many appellate court opinions. The differences in statutory provisions, factual situations, and judicial viewpoints make the decisions difficult to reconcile.

The Arkansas case of *Norton* v. *National Bank of Commerce*, 240 Ark. 143, 398 S.W. 2d 538 (1966) has become a leading case where suit is brought to recover a deficiency judgment. In that case it was held that since the creditor had wrongfully disposed of the collateral without notice to the debtor, it would be presumed "the collateral was worth at least the amount of the debt, thereby shifting to the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law." Unless this proof is made, the presumption will result in the failure to obtain a deficiency judgment. *Barker* v. *Horn*, 245 Ark. 315, 432 S.W. 2d 21 (1968). If this proof is made, judgment can be rendered for any deficiency that exists after the debt is credited with the amount that reasonably should have been obtained through a sale conducted according to law, *Universal C.I.T.* v. *Rone*, 248 Ark. 665, 453 S.W. 2d 37 (1970).

In this case, however, no deficiency judgment was sought and we have not been cited an Arkansas case involving the right to recover for loss caused by failure to comply with notice requirements where there was no claim for deficiency. The situation has been discussed, though, by Steve H. Nickles in 34 Ark. L. Rev. 1 (1980). Pointing out that one of the purposes and policies underlying the code as set out in section 85-1-102(2)(c) is "to make uniform the law among the various jurisdictions," Nickles suggests this is accomplished when the loss caused by failure to comply with notice requirements is measured by the value of the security at the time of its wrongful disposition less the amount of the debt due before the disposition was made. 34 Ark. Law Rev. at 154. This suggestion is reached as follows:

Prior to the adoption of the Code, a majority of courts

held that a chattel mortgagee or a conditional vendor with the power of resale was liable for conversion for failing to follow the procedures prescribed by law or the parties' contract with respect to disposing of the collateral. The usual measure of the debtor's damage was the value of the property at the time of the conversion less the balance of the obligation owed the creditor. Section 9-507(1) does not displace the common law conversion remedy for wrongful foreclosure (or at least its measure of damages) but instead, expressly perpetuates it. The section should be interpreted so as to put the debtor 'in as good a position as if the other party [the secured party] has fully performed.' Therefore, the 'loss caused by a failure to comply' with Part 5 of Article 9 must be the difference between the amount which would have been obtained from the resale of the collateral if the secured party had complied with the provisions of Part 5 and that which was actually received. . . . If the debtor's 'loss' under section 9-507(1) is measured in this way it will be identical to the compensatory damages for which the secured party would be liable under a common law conversion theory, i.e., the value of the property at the time of conversion less the outstanding balance on the debt at that time.

. . . .

... The *Norton* approach is nothing more than the common law conversion theory with a twist, i.e., the presumption regarding the property's value.

Nickles, *Uniform Commercial Code*, 34 Ark. L. Rev. 143-52, 156.

We agree with the measure of the debtor's "loss" suggested by Nickles and this is the measure urged by the appellant — the value of the collateral less the debt owed thereon. While we agree with his rule of law, we cannot find for him under the evidence.

Mayhew introduced evidence from an expert witness that the value of the collateral was a minimum of $26,000

and a maximum of $29,000. However, this witness had not driven the tractor and admitted he had "just kind of given it a sidewalk appraisal." He had seen the rig "probably within thirty days" of its repossession but did not know whether the tractor engine had a cracked block or whether the trailer had been broken in two. Loveless testified that the tractor was worth less than $8,000 when he traded it about ten days after it was repossessed. This value took into consideration that it had a cracked engine block which would cost $5,000 to repair. He testified the trailer had been "broken in two" and he traded it "sight unseen" for another trailer worth $2,500. Thus the total value of the rig according to his testimony would not exceed $10,500. By stipulation it was agreed that the balance due on the debt at the time of repossession was $11,238.47 ( $2,950 owed to Loveless and $8,288.37 owed on the monthly payments assumed by Mayhew.) So, if the chancellor accepted the value of the collateral at $10,500, as testified to by Loveless, the value of the collateral at the time of repossession was less than the amount due on the debt and the failure to comply with notice requirements before sale has not caused Mayhew any loss.

Even though we try chancery cases de novo, we do not reverse unless the chancellor's findings are clearly against the preponderance of the evidence. *Hackworth* v. *First National Bank*, 265 Ark. 668, 580 S.W. 2d 465 (1979);*Loftin* v. *Goza*, 244 Ark. 373, 425 S.W. 2d 291 (1968); Rule 52, Arkansas Rules of Civil Procedure. In fact, we must affirm the decree when it appears correct from the record as a whole even if the chancellor based his decision upon the wrong reason. *Morgan* v. *Downs*, 245 Ark. 328, 432 S.W. 2d 454 (1968).

Affirmed.

CORBIN and GLAZE, JJ., not participating.

FOGLEMAN, Special Judge, joins in this opinion.