216

Deborah Ann SANDERS (HALLOWELL) and
Frank HOLLEY *v.* Michael Ray SANDERS

CA 80-404                                    615 S.W. 2d 375

Court of Appeals of Arkansas
Opinion delivered April 29, 1981
[Rehearing denied June 3, 1981.]

*Thorp Thomas*, for appellants.

*Mike Wilson*, for appellee.

MELVIN MAYFIELD, Chief Judge. This is a child custody case. The child was born June 25, 1971. Her parents were divorced on January 30, 1975, by a Pulaski Chancery Court which granted custody of the child to the mother.

On September 11, 1975, the court granted the mother's petition to remove her daughter from Arkansas to California where the mother, who was planning to remarry, intended to live. The order also provided that the father would have custody for thirty days each year during the summer.

In the summer of 1979 the mother sent the child to Arkansas for the thirty-day visit with the father but instead of returning her at the end of the thirty days, the father filed a petition to change custody to himself and filed a motion for an extended period of visitation until his petition could be heard.

The mother filed a response to the petition and caused an order to issue directing the father to show cause why he should not be held in contempt for failing to return the child. On August 22, 1979, a hearing was held with both

parties and their attorneys present. The court denied the father's motion for an extended period of visitation, set the change of custody hearing for May 26, 1980, ordered the mother to post $1,000.00 bond to assure that she and the child would return to Arkansas for the hearing, and directed that Arkansas Social Services arrange for examination and evaluation of the home conditions of both parents and make a written report thereof to the court.

The hearing date was later changed from May 26, 1980, to May 12, 1980. Before the hearing the mother filed a motion for continuance and a motion asking that the cause be removed from the calendar and dismissed. These motions were denied and the hearing was held. Neither mother nor child were present but the mother's attorney was in attendance and participated at the hearing. Testimony was heard, reports from Social Services of both Arkansas and California were introduced, and depositions were read. At the conclusion of the hearing the court changed the custody to the father.

Three days later a petition was filed to forfeit the $1,000.00 bond which the court had previously ordered posted to assure the attendance of the mother and child at the hearing. This bond had been made and posted by the mother's father. He was notified of the hearing set on the petition but did not appear and the bond was forfeited.

The mother and her father have appealed. They urge four points for reversal: (1) the court should have granted a continuance; (2) the child was in California, custody jurisdiction was in the courts of that state, and Arkansas should not have changed it; (3) the evidence was not sufficient to change custody; and (4) the bond should not have been forfeited.

On the question of continuance, the appellants concede this is a matter within the sound discretion of the trial court. At the hearing on August 22, 1979, the court let the child return to California with her mother and tentatively set a hearing for May 26, 1980, on the father's petition. This was nine months later and the date was selected by the chancellor

after inquiring about the child's school schedule and after being told about the mother's work vacation. He really did not get much information about either at the time and specifically asked that a copy of the school schedule be submitted so he could have the information and firm up the matter on the docket. Subsequent to that, it appears that an interrogatory submitted to the mother about her daughter's school schedule was not fully answered and on December 19, 1979, the court entered an order directing that it be answered, but no further answer appears in the record.

On May 7, 1980, the mother filed a motion for continuance which was not granted. In her brief this appellant says she had been with the company for which she worked since July of 1979, and because she had not been there for one year it was impossible to take leave for the trial on May 12, 1980, and she argues that the case should have been reset within a month which would have allowed her to be present. She knew this, however, when the court tentatively set the case for May 26, 1980, and while the date was finally changed to May 12, she waited until May 7 to file a motion for continuance.

Considering the long period of time from August of 1979 to the hearing in May of 1980, and appellant's rather indifferent attitude toward the court's effort to fix the hearing date, we cannot say the trial court abused its discretion in refusing to grant a continuance. *McMorella* v. *Greer*, 211 Ark. 417, 200 S.W. 2d 974 (1947); *Crisco* v. *Murdock Acceptance Corp.*, 222 Ark. 127, 258 S.W. 2d 551 (1953).

In addition to the motion for continuance filed by the mother on May 7, 1980, she also filed, that same day, a motion which alleged that she had filed an action in California, asking that the Arkansas decree (giving her custody) be established as a California judgment and enforced by that state. The motion asked that the father's petition to change custody be removed from the docket of the Arkansas court and be dismissed pending further proceedings in the California court.

Both Arkansas and California have adopted the Uniform Child Custody Jurisdiction Act. Our act, Ark. Stat. Ann. § 34-2701 — 2725 (Cum. Supp. 1979), was approved February 9, 1979, and became effective July 20, 1979 (90 days after the legislature recessed on April 20, 1979).

Section three of the act (34-2703) allows a state to exercise jurisdiction over a child if that state is the 'home state' of the child or it is in the best interest of the child. Jurisdiction is not granted solely on the physical presence of the child, except in cases of abandonment, emergency, or when there is no other state which can or or will assume jurisdiction. Conversely, physical presence of the child, although desirable, is not a prerequisite for jurisdiction.

*Survey of Arkansas Law 1978-1979*, 3 UALR L.J. 239-40 (1980).

Under section 34-2703 of the act, Arkansas undoubtedly had jurisdiction to modify the custody decree here involved. A closer question is presented as to whether the Arkansas court should have modified the decree. In a similar situation it appears that California stayed a custody proceeding pending a determination by a Wyoming court. See *Schlumpf* v. *Superior Court*, 79 Cal. App. 3d 892, 145 Cal. Rptr. 190 (1978).

In this case, however, there are several considerations which we think made it proper for the Arkansas court to have exercised its jurisdiction to change custody of the child.

In the first place, section 34-2706 of the act provides that a state shall not exercise jurisdiction if at the time of filing the petition a proceeding concerning the custody of the child is pending in the court of another state exercising jurisdiction substantially in conformity with the act. No such proceeding was pending in California at the time the petition to modify was filed in Arkansas by the father.

In the second place, section 34-2707 provides that a court may decline to exercise its jurisdiction if it finds that it

is an inconvenient forum to make a custody determination and a court of another state is a more appropriate forum. The section provides that in determining whether it is an inconvenient forum, the court may take into account whether substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state and if the exercise of jurisdiction would contravene any of the purposes stated in section 1 of the act. It does not appear that the evidence referred to in the section would be more readily available in California. As a matter of fact, the evidence available in California was presented by deposition in the Arkansas hearing along with extensive evidence available here.

Also, one of the purposes of the act set out in section 1 is to "deter abductions and other unilateral removals of children undertaken to obtain custody awards." In this case the father filed a petition in Arkansas to change custody to himself and filed a motion for an extended period of visitation until his custody petition could be heard. The mother, however, who was allowed to take the child back to California until that petition could be heard, did not return the child in keeping with the order of the court which allowed her to take the child to California. For Arkansas to defer to a custody determination by California under these circumstances would be to contravene the purposes of the act.

We cannot say that the court erred in exercising its jurisdiction to modify the custody decree which it had previously rendered.

The appellants also argue that the evidence was not sufficient to support the chancellor's change of custody. A long recitation of the evidence in this regard would serve no useful purpose. Suffice it to say, there was evidence concerning the child's physical condition, personal hygiene, and table manners. There was evidence from her school teachers in California and reports and evaluations of home conditions from Social Services of both Arkansas and California. And there was evidence that the father was able to offer the

girl a stable, secure, and loving home environment in a community where both her maternal and paternal grandparents reside as well as other relatives of both her mother and father. Although appellants suggest that the court changed custody to the father as punishment for the mother's failing to appear, the court specifically said that was not the basis upon which the change was made.

The primary consideration in awarding custody of children is the welfare and best interest of the children involved. *Digby* v. *Digby*, 263 Ark. 813, 567 S.W. 2d 290 (1980). And our court has held, "If the welfare of the child so requires, a decree may be modified without a change of circumstances." *Phelps* v. *Phelps*, 209 Ark. 44, 47, 189 S.W. 2d 617 (1945).

Even though we try chancery cases de novo, we do not reverse unless the chancellor's finding is clearly against the preponderance of the evidence. *Hackworth* v. *First National Bank*, 265 Ark. 668, 580 S.W. 2d 465 (1979); *Loftin* v. *Goza*, 244 Ark. 373, 425 S.W. 2d 291 (1968); Rule 52, Ark. Rules of Civil Procedure.

Finally, the appellants contend that the $1,000.00 bond posted by the mother's father, Frank E. Holley, should be held null and void because it provided for payment to be made to Pulaski County and not to the appellee, Michael R. Sanders.

It is true that the bond provides that Frank E. Holley as principal is "held and firmly bound to the County of Pulaski" but it also says "there is now pending a motion to change custody of the parties' minor child from the plaintiff to the defendant and principal is required to furnish a bond in the sum of $1,000.00 to secure the appearance of Deborah Ann Sanders Hallowell and Holley Sanders to personally appear in Chancery Court of Pulaski County, Arkansas, at the time and date to be set by this court for its adjudication on the custody matter." The bond concludes that if those persons do appear at the time and place set by the court, then the "obligation shall be null and void, otherwise it shall remain in full force and effect." In *Herring* v. *Morton*,

248 Ark. 718, 453 S.W. 2d 400 (1970), a bond was executed for the same purpose as the one here involved and was made payable to Hempstead County. The trial court had directed that the proceeds of the bond be paid to the appellee and on appeal it was urged that the proceeds should have been paid to Hempstead County, but the Supreme Court said:

> However, since the purpose of such bonds is to insure compliance with the orders of the court and to give some security to the parties litigant, it appears to us that perhaps a better procedure would be to require the proceeds of the forfeited bond to be paid into the registry of the court for the use and benefit of the parties litigant in enforcing the decree of the court in any jurisdiction where the minor child may be found. While this procedure may cause additional work on the part of the trial court and its clerks in policing withdrawals from the funds, it has the salutary effect of permitting the surety to protect himself to some extent by encouraging the principal to purge herself of the contempt and thus obtain a refund or partial refund of the amount of the bond. To this extent the order of the trial court should be modified.

The *Herring* case was cited in *Langley* v. *Denton*, 263 Ark. 904, 568 S.W. 2d 19 (1978) where the bond was also ordered paid into the registry of the court.

In our case the order of the court forfeiting the bond provides that "Frank E. Holley is ordered to pay unto Michael R. Sanders the sum of $1,000,00"; and that "Michael R. Sanders is given judgment against Frank E. Holley in the amount of $1,000.00." Under the authority of the *Herring* and *Langley* cases, we do not think this was the proper procedure to follow. The proceeds of the bond should have been ordered paid into the registry of the court for the use and benefit of the appellee in enforcing the decree of the court. If payment has not been made or is not forthcoming, judgment may be rendered and enforced in the name of the county with the proceeds to be paid into the registry of the court for the use and benefit of the appellee as herein provided.

The decree changing custody from the mother to the father and holding the mother in contempt of court for her failure to appear at the hearing is affirmed. The order of the court granting judgment in favor of the appellee against the principal on the bond is reversed and remanded to the trial court to be modified in keeping with this opinion.

GLAZE, J., not participating.