**HERRING MINING COMPANY and Mike Herring, Individually and as Sole Stockholder of Herring Mining Company, Appellants,**

v.

**ROBERTS BROTHERS COAL COMPANY, INC. and Kirkwood Excavating, Inc., Appellees.**

No. 87–CA–103–MR.

Court of Appeals of Kentucky.

Jan. 22, 1988.

Rehearing Denied April 8, 1988.

Daniel N. Thomas, Thomas and Ison, P.S.C., Hopkinsville, for appellants.

L. Rushing Hunt, III, Donan & Hunt, Madisonville, for appellees.

Before HOWERTON, C.J., and COMBS and McDONALD, JJ.

McDONALD, Judge:

In the summer of 1980 the appellant, Herring Mining Company, and its sole owner, Mike Herring, borrowed the sum of $20,000 from the appellee, Roberts Brothers Coal Company, Inc. To secure the repayment of the debt, Herring gave Roberts Brothers a security interest in three pieces of equipment, a bulldozer, a scraper and a 25–ton lowboy trailer. By November, 1980, Herring was in default on the note

and, at Roberts Brothers' request, moved the scraper and lowboy to the latter's property. Roberts Brothers never attempted to get possession of the dozer and it is not involved in this litigation.

In December, 1980, both Herring Mining Company and Herring individually filed a voluntary petition for bankruptcy, listing therein a debt of $23,197.80 owed to Roberts Brothers. Roberts Brothers filed a proof of claim and asserted its interest in the three pieces of equipment. These items were not originally listed as assets by Herring, but the petition was eventually amended to include them. Herring valued the equipment as follows: the scraper, $2,000; the lowboy trailer, $1,000; and the dozer, $2,000.

Litigation was commenced by the trustee in the bankruptcy action against Roberts Brothers to challenge its status as a preferred creditor. This action was voluntarily dismissed by the trustee upon "satisfactory proof" that Roberts Brothers "had a valid security interest" in the equipment. Further, the trustee abandoned any interest in the equipment, it being apparent from the proof in the bankruptcy proceeding that the value of the equipment was considerably less than the secured creditor's claim. Herring did not reaffirm the debt to Roberts Brothers within the bankruptcy proceeding. An order of discharge was entered in September, 1981, thereby releasing Herring from responsibility for any amounts due Roberts Brothers in excess of the value of the collateral.

Roberts Brothers retained possession of the scraper and trailer after November, 1980. It used the equipment in its own business in 1981, and since 1982 has loaned the scraper to the appellee, Kirkwood Exca-

vating, which has made considerable improvements thereto.

In April, 1985, Herring commenced this action in the Hopkins Circuit Court, demanding return of the equipment and damages for the alleged wrongful possession by Roberts Brothers. Herring argued that Roberts Brothers did not proceed in a commercially reasonable manner in disposing of the collateral as required by the provisions of KRS 355.9–504. As damages, he sought the fair market rental value of the equipment for the past four and one-half years, less any amounts owed Roberts Brothers.[1] Roberts Brothers asserted that it did not need to dispose of the collateral under KRS 355.9–504, having retained the collateral in satisfaction of the obligation as provided in KRS 355.9–505(2).[2] Roberts Brothers acknowledged, however, that it had not given Herring notice of its intent to so retain the collateral as required by this Uniform Commercial Code provision.

In granting summary judgment for the appellees, the trial court determined that it would be "an unconscionable and unjust enrichment" of Herring to require return of the collateral "together with damages equal to the fair rental value thereof for the last five years or so." The trial court also ruled that Herring was not entitled to relief on the alternate grounds that (1) the "conduct and actions of Roberts Brothers clearly evinced such intention;" and (2) Herring "acquiesced" in Roberts Brothers' continued possession and control of the equipment.

Under our statutory scheme, a creditor who takes possession of collateral upon the default of the debtor has two alternatives in dealing with the collateral. He must either sell the property in a "commercially reasonable" manner with notice

1. Herring testified that the fair market rental value of the scraper was between $5,000 and $7,000 monthly.

2. "KRS 355.9–505(2) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modify-

ing his rights under this subsection.... If the secured party receives objection in writing from a person entitled to receive notification within twenty-one (21) days after the notice was sent, the secured party must dispose of the collateral under KRS 355.9–504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation."

provided to the debtor of the sale, KRS 355.9–504(1), (2), (3), or he may elect to retain the collateral in satisfaction of the debt. KRS 355.9–505(2). If he chooses the latter route, he must provide written notice of the proposal to the debtor who may object (within 21 days) to such retention and require the secured party to dispose of the collateral by sale. *Id.* Obviously, where the value of the collateral exceeds the amount owed, it would be in the debtor's best interest to so object. Failure of the secured party to comply with the code provisions concerning disposal of the collateral will result in his liability to the debtor for damages, under KRS 355.9–507(1), for "any loss caused by a failure to comply with the provision...."

The issue presented in this appeal is what relief, if any, Herring is entitled to because of Roberts Brothers' failure to provide Herring with the requisite notice of its election to retain possession of the collateral rather than dispose of it under KRS 355.9–504.

The purpose for the notice provision in KRS 355.9–505(2) is, of course, to allow a debtor to protect any interest in the collateral in excess of the amount owed the creditor. It also lets the debtor know when his rights of redemption will expire.[3] Moreover, it is designed to protect a creditor from claims such as the one filed in the instant action, that he should have sold the collateral. *Moran v. Holman,* 514 P.2d 817, 820 (Alaska 1973); R. Anderson, *Uniform Commercial Code* § 9–505:5, p. 632 (2d ed. 1971).

There is authority in Kentucky which indicates that the notice provisions pertaining to the disposal of collateral may be waived. *See Nelson v. Monarch Investment Plan of Henderson, Inc.,* Ky., 452 S.W.2d 375 (1970). There is also authority in other jurisdictions that strict compliance with the written notice provisions of this particular U.C.C. provision is not "essential" as long as the creditor has "in some way ... manifested an intent to accept the collateral in full satisfaction of the debtor's

obligation." *Nelson v. Armstrong,* 99 Idaho 422, 582 P.2d 1100, 1108 (1978). The concept that the notice requirement can be satisfied by either express or implied retention of the collateral is frequently utilized by the courts in those actions brought by a creditor seeking a deficiency judgment. *E.g. Haufler v. Ardinger,* 28 U.C.C.Rep. Serv. 893 (Mass.Dis.Art., App.Div.1979). Nevertheless, the issue of implied retention, as well as that of waiver of notice by Herring's acquiescence, involve issues of fact not appropriate for resolution upon a motion for summary judgment. CR 56.03.

There is, however, a more basic reason to dismiss Herring's complaint, that being that he cannot, as a matter of law, demonstrate that he suffered any damages as a result of Roberts Brothers' failure to give him written notice of its intent to proceed under KRS 355.9–505(2).

Had Herring received notice and made timely objection to Roberts Brothers' plan, he would be in no different position than he is today. This is because his damages could not be greater than the fair market value of the collateral less the balance due Roberts Brothers. *See Home Finance Company v. Ratliff,* Ky., 374 S.W.2d 494, 496 (1964); *Mayhew v. Loveless,* 1 Ark. App. 69, 613 S.W.2d 118 (1981). As the amount owed ($23,197.80, according to Herring's sworn petition; $20,000, according to Roberts Brothers proof of claim) was *greater* than the value of the collateral ($3,000 for the two items), Herring suffered no loss or damages by reason of failure to receive proper notice of Roberts Brothers' intentions. Obviously his ability to require a sale under KRS 355.9–504 would not have realized him any sum. Although Herring disputes the amount of debt and value of the equipment contained in the bankruptcy petition, the doctrine of collateral estoppel or issue preclusion prevents a relitigation of those factual matters, *see Nunnellee v. Nunnellee,* Ky., 415 S.W.2d 114 (1967), thereby making summary judgment appropriate.

3. KRS 355.9–506. Herring has never attempted to redeem the property.

**620**

Herring asserts that the measure of damages should be the fair rental value of the collateral for the period of time the creditor utilized the collateral. The cases he cites for this proposition, *Contrail Leasing Partners, Ltd. v. Consolidated Airways, Inc.*, 742 F.2d 1095, 39 U.C.C.Rep. Serv. 9, (U.S.C.A. 7th Cir.1984), and *Massey–Ferguson Creditor Corp. v. Peterson*, 102 Idaho 111, 626 P.2d 767 (1980), merely provide that when the creditor leases collateral to a third party prior to resale under U.C.C. § 9–504, the proceeds of the lease must be applied against the deficiency owed by the debtor. These cases have no application that we can see to the situation where the creditor does not dispose of the collateral but retains it in full satisfaction of the debt.

The judgment of the Hopkins Circuit Court is affirmed.

All concur.