RENDERED: AUGUST 13, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0983-MR

LOUISVILLE GALLERIA, LLC                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE ANGELA MCCORMICK BISIG, JUDGE
ACTION NO. 12-CI-005734


KENTUCKY PUB INVESTMENTS, LLC;
SHEILA SANDERS; AND
WALLACE NICHOLSON SANDERS                              APPELLEES

AND

NO. 2020-CA-1024-MR


KENTUCKY PUB INVESTMENTS, LLC;
SHEILA SANDERS; AND
WALLACE NICHOLSON SANDERS               CROSS-APPELLANTS


CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE ANGELA MCCORMICK BISIG, JUDGE
ACTION NO. 12-CI-005734

LOUISVILLE GALLERIA, LLC                    CROSS-APPELLEE


OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **


BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

CLAYTON, CHIEF JUDGE:  Louisville Galleria, LLC ("Galleria") appeals the

Jefferson Circuit Court's post-remand order awarding Galleria $0 in damages and

$150,000 in attorneys' fees arising from Kentucky Pub Investments, LLC's (the

"Pub") breach of contract and awarding the Pub $478,946.26 in conversion

damages.  Additionally, the Pub has cross-appealed as to the issue of attorneys'

fees.  After a review of the record and applicable law, we affirm in part, reverse in

part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, the Pub began leasing a 5,000 square foot premises at Fourth

Street Live! in downtown Louisville (the "Premises") from Galleria in which the

Pub was to operate a bar and restaurant.  The Pub signed a lease (the "Lease") with

Galleria for the Premises which stipulated that the Pub was to pay rent and a *pro

rata* share of common area maintenance ("CAM") charges.  In informal letters

between the parties outlining basic terms and conditions, such CAM charges were

estimated to total $6.00 per square foot. No specific amount was contained in the Lease. Moreover, the Lease contained no cap on the CAM charges, and stated that the CAM charges were subject to adjustment should the actual amount of Pub's CAM expenses for an operating year exceed what it had paid in monthly installments. Further, the Lease indicated that Galleria could, with notice to the Pub, alter its estimate of total CAM charges.

On August 5, 2010, Galleria sent notice to the Pub that it owed $57,490.52 in unpaid CAM charges for the 2008 operating year and $38,718.69 for the 2009 operating year. On November 16, 2010, Galleria sent another round of notices informing the Pub it owed $63,846.88 in unpaid CAM charges for operating year 2005, $58,877.00 in unpaid CAM charges for operating year 2006, and $58,476.79 for operating year 2007. Following these notices, Galleria also raised the Pub's total estimated CAM charges for the 2011 operating year from $6.00 per square foot to $17.33 per square foot.

After the Pub refused to pay the outstanding CAM charges owed for the previous years or the monthly payments at the new estimated rate, Galleria filed a forcible detainer action against the Pub in Jefferson District Court in September of 2012. On November 7, 2012, the Jefferson District Court held a forcible detainer hearing and ultimately found that Galleria was entitled to possession of the Premises. The Pub subsequently vacated the Premises.

-3-

Meanwhile, on October 20, 2012, the Pub filed an action in Jefferson Circuit Court seeking a declaratory judgment that Galleria did not have the right to collect either the unpaid CAM charges or the CAM charges billed at the higher estimated rate for the 2011 operating year. The Pub also claimed that Galleria had breached its implied covenant of good faith and fair dealing when it allowed a competitor to open across the street; had committed fraud in the inducement when it represented that the Pub's CAM charges would be between $5.00 and $6.00 per square foot; had constructively evicted the Pub by retroactively imposing CAM charges and then miscategorizing rent payments as payments of disputed CAM charges; had waived its right to collect payments from the Pub; and was equitably estopped from imposing "retroactive" CAM charges on the Pub. In December of 2012, the Pub amended its complaint to add a claim for conversion, alleging that Galleria had refused to allow the Pub to retrieve its property from the Premises.

Thereafter, Galleria filed an answer and counterclaim, alleging that the Pub had breached the Lease by failing to pay rent when due; that the Pub had abandoned the Premises by closing the restaurant prior to the end of the Lease term, entitling Galleria to recover liquidated damages; that Galleria was entitled to collect late fees in addition to deficiencies in the rent under the Lease; that Galleria was entitled to collect reasonable attorneys' fees under the Lease; and that Galleria had performed all obligations under the Lease. Galleria alleged that it was owed a

total of $2,655,105.80, calculated as follows: $309,053.00 in back rent as of November of 2012; $585,513.20 in unpaid rent through the remainder of the Lease term; and $1,759,539.60 in liquidated damages for the Pub's breach of the Lease.

In 2017, the circuit court found that Galleria had committed fraud in the inducement, had breached the implied covenant of good faith, and had converted the Pub's property. Galleria appealed, and the Pub cross-appealed, the circuit court's order.

A panel of this Court affirmed in part and reversed in part, holding that while Galleria did convert the Pub's property, Galleria did not commit fraud in the inducement or breach the implied covenant of good faith and fair dealing. The Court also held that the Pub breached the lease when it failed to pay rent and remanded the matter back to the circuit court with the following instructions:

> On remand, the circuit court shall determine the amount of damages due to Galleria for the Pub's breach of the Lease. Those damages shall be offset by any damages awarded to the Pub for Galleria's conversion of its property, which amount shall be determined based on the fair market value of the Pub's property at the time of conversion.

However, the Court further held that Galleria's claim that the Pub's action in vacating the Premises following final judgment in the forcible detainer action did not trigger Galleria's right to liquidated damages under the Lease, as Galleria had filed the writ for forcible detainer and had prosecuted the action to final judgment.

Following a hearing, the circuit court entered a post-remand order on July 22, 2020, finding that: (1) Galleria had waived its claim for any deficiencies owed under the lease because it retained the Pub's property rather than disposed of it in accordance with Article 9 of the Uniform Commercial Code (the "UCC"), and, therefore, that Galleria's damages for breach of the lease were zero dollars; (2) the fair market value of the Pub's converted property was $478,946.26; and (3) Galleria was entitled to an award of attorneys' fees amounting to $150,000. This appeal and cross-appeal followed.

**STANDARD OF REVIEW**

The circuit court's findings of fact shall not be set aside unless clearly erroneous. Kentucky Rule of Civil Procedure (CR) 52.01. "If the trial judge's findings of fact in the underlying action are not clearly erroneous, *i.e.*, are supported by substantial evidence, then [this] court's role is confined to determining whether those facts support the trial judge's legal conclusion." *Commonwealth v. Deloney*, 20 S.W.3d 471, 473-74 (Ky. 2000). We review the circuit court's legal conclusions *de novo*. *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (citing *Sawyers v. Beller*, 384 S.W.3d 107, 110 (Ky. 2012)).

**ANALYSIS**

On appeal, Galleria argues that (1) the circuit court's holding that Galleria waived any breach damages when it failed to dispose of the Pub's

-6-

property in accordance with UCC Article 9 contravenes the plain language of the UCC; (2) Galleria should be entitled to future rent as part of its breach damages; (3) the circuit court erred by not rejecting the Pub's expert testimony and by awarding the Pub $478,946.26 in conversion damages; and (4) the circuit should have awarded Galleria $599,919.00 in attorneys' fees. On cross-appeal, the Pub contends that Galleria was not the prevailing party in the dispute, and, therefore, its claim for attorneys' fees has no merit. We will consider each argument in turn.

## I. Breach of Lease Damages

### A. Waiver of Deficiency

As previously discussed, on remand, this Court instructed the circuit court to "determine the amount of damages due to Galleria for the Pub's breach of the Lease" and to offset that number by any damages awarded to the Pub for Galleria's conversion of its property. The circuit court instead found that Galleria had waived any claim it had to breach of lease damages because it had failed to comply with the UCC's requirements for the disposition of collateral. Galleria asserts that the circuit court's holding is at odds with provisions of the UCC codified in state law and this Court's prior holding that Galleria is liable to the Pub for conversion of its property. We agree.

In the parties' first appeal, this Court held that although the Lease gave Galleria, as the secured party, a right to possess the Pub's property should the

-7-

Pub default, Galleria nonetheless converted the Pub's property. Under the UCC as it is codified in Kentucky, Kentucky Revised Statutes (KRS) 355.9-609(1) allows a secured party to take possession of a debtor's collateral following an event of default. However, this right does not allow a secured party to retain the debtor's property in perpetuity. The secured party has two options: "He must either sell the property in a 'commercially reasonable' manner with notice provided to the debtor of the sale . . . or he may elect to retain the collateral in satisfaction of the debt." *Herring Min. Co. v. Roberts Bros. Coal Co., Inc.*, 747 S.W.2d 616, 618-19 (Ky. App. 1988) (citations omitted). If the latter option is chosen, written notice must be provided to the debtor, who may object to retention of the property and require disposition of the property by sale. *Id*.

This Court previously held that Galleria had not attempted either of these alternatives, as Galleria had made no efforts to sell the property and had made "no suggestion" that it elected to retain the property in satisfaction of Pub's debt. Thus, this Court concluded that "[Galleria's] retention of the Pub's property appears to be nothing more than a taking, and amounts to conversion." Based on such conclusion, this Court remanded the circuit court's opinion with instructions to calculate damages for breach of the Lease and to offset those damages by the fair market value of the property that had been converted.

In its post-remand order, the circuit court held that once a secured party takes possession of a debtor's collateral, a commercially reasonable sale of such collateral is always a prerequisite to any remaining deficiency that the debtor owes the secured party, and, therefore, Galleria's failure to conduct such a sale waived any right it had to collect breach damages from the Pub. In doing so, the circuit court misconstrued the prior rule employed by this Court, which explicitly provides for an alternative: acceptance of the collateral in full *or partial* satisfaction of the debt. KRS 355.9-620. (Emphasis added.) Indeed, the statute provides that, where a secured party accepts collateral in partial satisfaction of a debt, the secured party may then recover any remaining deficiencies, even in the absence of a commercially reasonable sale. The UCC provides that the Pub's liability for a deficiency is in "an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds . . . [t]he amount of proceeds that *would have been* realized had" Galleria conducted a commercially reasonable sale of the collateral. KRS 355.9-626(1)(c)(2) (emphasis added). Therefore, under the specific wording of the statute, the failure to conduct a sale does not waive a deficiency.

Even further, when faced with a secured party that has failed to prove its compliance in conducting a commercially reasonable sale or proper acceptance of collateral - as Galleria has - provisions of the UCC codified in KRS 355.9-

626(1)(c)(2) explicitly instruct the Court in calculating the amount of deficiency owed. In those circumstances, a determination is made to the amount of proceeds that *would have* been realized had the secured party actually conducted the sale, and that amount is then credited against the debtor's obligation. And that is precisely the calculation this Court instructed the circuit court to make on remand. Galleria had converted the Pub's property, failed to conduct a sale of the property, never made any suggestion it intended to retain the property in satisfaction of the debt, and was therefore liable to the Pub for the value of what a commercially reasonable sale of the property would yield. It is clear "waiver" is not applicable in this instance as the Pub contends.

The Pub bases a great deal of its argument on the Court's decision in *Lee & Mason International Agency, Inc. v. Daugherty*, 828 S.W.2d 677 (Ky. App. 1992). In *Daugherty*, a panel of this Court held that a bank's assignment of an interest in an automobile to a third-party insurance agency did not constitute a commercially reasonable sale as prescribed by UCC Article 9. *Id*. at 679. Because a sale did not occur, the Court held that the debtors could not be held liable for a deficiency that could not be determined. *Id*.

As a preliminary matter, the *Daugherty* decision pre-dated the enactment of KRS 355.9-626 by approximately eight years. Moreover, the case at hand is distinguishable from *Daugherty* in that this Court did not rule on appeal

-10-

that Galleria tried but failed to hold a commercially reasonable sale of the Pub's property. Nor did the Court find that the deficiency between Galleria's breach damages and the Pub's conversion damages could not be determined. Indeed, this Court remanded with explicit instructions for calculating that very deficiency. Thus, we do not find *Daugherty* to be applicable in this situation.

We find *Herring* to address more fully the damages a debtor may recover when a secured party fails to provide notice of its election to retain collateral. *Herring*, 747 S.W.2d at 619. The *Herring* Court specifically limited recovery to "loss caused by a failure to comply with the [UCC] provision." *Id*. The Court dismissed Herring's claim because "his damages could not be greater than the fair market value of the collateral less the balance due . . . [.]" *Id*. By the same reasoning, as the previous panel of this Court found, the Pub is entitled to an offset representing the amount that would have been recovered had the converted equipment been sold.

Moreover, the circuit court's post-remand order is also flawed in that it achieves an antithetical result by holding both that (1) Galleria is liable to the Pub for conversion of its collateral property and (2) the Pub's debt to Galleria is extinguished by Galleria's retention of the very same collateral property. In ruling that Galleria's failure to properly dispose of the Pub's property barred it from collecting breach damages, the circuit court effectively treated Galleria's

conversion of the property as acceptance of the collateral in full satisfaction of the Pub's debt. However, the circuit court also awarded the Pub damages for Galleria's conversion of that same property. It had already been established by this Court that, as a matter of law, Galleria converted the Pub's property and thus had no legal title to the property. *Jasper v. Blair*, 492 S.W.3d 579, 582 (Ky. 2016). But if Galleria was entitled to zero damages because the Pub's debt is satisfied by a full acceptance of the property, then Galleria had clearly taken title to the property. Indeed, "[a] secured party's acceptance of collateral in full or partial satisfaction of the obligation it secures . . . [t]ransfers to the secured party all of a debtor's rights in the collateral[.]" KRS 355.9-622(1)(b).

Accordingly, because the circuit court's conclusion that Galleria's retention of the Pub's property waived its claim for any remaining deficiency was in error, we reverse and remand with instructions for the circuit court to determine the amount of damages due to Galleria for the Pub's breach of the Lease, with such damages offset by the damages awarded to the Pub for Galleria's conversion of its property.

### B. Galleria's Entitlement to Future Damages

Galleria next argues that it is entitled to all damages arising from the Pub's breach of contract except for liquidated damages, including past and future rental, late charges, and interest. Alternatively, the Pub claims that Galleria is not

entitled to future rents that came due during the remaining term of the Lease, arguing that there is no distinction between Galleria's claim for contractual future liquidated damages for the remainder of the Lease term, which were denied by this Court, and Galleria's claim for contractual future rental damages for the remainder of the same Lease term.

We disagree, as the Court's determination that Galleria was not entitled to liquidated damages for violation of the continuous occupancy clause is not related to the clauses in the Lease concerning the Pub's liability for future rent damages. The terms of the Lease clearly provide for future rents to be paid as damages for a breach, and the Pub has not cited us to any pertinent authority that stands for the proposition that if a landlord seeks to evict a tenant in default, the landlord necessarily waives any right to future rent damages.

Nevertheless, an injured party "claiming damages for a breach of contract is obligated to use reasonable efforts to mitigate its damages occasioned by the other party's breach." *Deskins v. Estep*, 314 S.W.3d 300, 305 (Ky. App. 2010) (citation omitted). Accordingly, we add to our instructions on remand that the circuit court include future rents in its determination of the total amount of damages, while also determining what mitigation of damages, if any, has occurred in this action.

## II. Conversion Damages

In its post-remand order, the circuit court chose not to exclude either party's expert witness' testimony regarding the valuation of the Pub's converted property. A trial court abuses its discretion in determining whether to admit expert witness testimony when its ". . . decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 378 (Ky. 2000) (citing *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)).

We find that, based upon the foregoing standard of review, the circuit court's decision to admit both experts' testimony did not constitute an abuse of discretion. The circuit court correctly opined, and the record indicates, that both the Pub's expert Mr. Sherman and Galleria's expert Mr. Schwartz each had ample experience in the restaurant industry, and each of their competing valuations of the Pub's converted property drew from that relevant experience. While Galleria continues to attack the qualifications of the Pub's expert witness, the circuit court was within its right to believe the Pub's witness over Galleria's. Our determination is not whether we would have done the same, but whether the circuit court abused its discretion. The circuit court was persuaded that Mr. Sherman's determination of the fair market value of the Pub's converted property of $478,946.26 was correct and was well within its right to do so.

-14-

We are not persuaded by Galleria's argument that the Pub is bound by its prior valuation of the converted property at $359,000. Galleria contends that the Pub's first approximation that the converted property was worth $359,000 solidified that figure as the property's "highest and best use" value. However, as the circuit court observed, this valuation simply reflected what the Pub would have been willing to pay for the property at a commercially reasonable sale, and not the true fair market value of the property. Because this Court remanded with explicit instructions to determine the value of the Pub's converted property "based on the fair market value . . . at the time [of] conversion," Galleria's argument is misplaced, and we affirm as to this issue.

## IV. Attorneys' Fees

On appeal, Galleria contends that, as the one true "winner" of this action, it is entitled to the full amount of the attorneys' fees it had requested, or $599,919.30. Conversely, the Pub argues that Galleria's claim to any attorneys' fees at all is improper. The reasonableness of an award of attorneys' fees lies within the sound discretion of the trial court. *Ford v. Beasley*, 148 S.W.3d 808, 813 (Ky. App. 2004).

KRS 411.195 states that a provision in a contract authorizing reasonable attorneys' fees is enforceable. Section 2701 of the Lease allowed Galleria to recover its reasonable attorneys' fees if it prevailed in a dispute.

Indeed, each party has acknowledged that under the Lease the prevailing party in this action is entitled to recover reasonable attorneys' fees.

Unfortunately for both parties, however, there are no clear winners or losers in this situation. We agree that because this Court previously determined that the Pub had breached the Lease, Galleria was entitled to an award of reasonable attorneys' fees. Moreover, we agree with the circuit court that Galleria's "limited success" in the matter warranted a fee reduction from the $599,919.30 requested by Galleria.

There is no disputing that both parties have argued long and hard as to their respective positions, each side capturing victories and suffering losses at different stages of litigation. Galleria was successful in showing that the Pub breached the Lease but was also found to be liable on the Pub's claim for conversion. Galleria defeated the Pub's initial fraud claim but lost its *res judicata* argument. It is abundantly clear from the record that the circuit court exerted its due diligence in weighing these relevant factors before coming to its determination on the issue of attorneys' fees. Accordingly, we find no abuse of discretion on the part of the circuit court.

## CONCLUSION

Thus, we affirm the circuit court's order with regard to the conversion damages ordered as well as the portion of the order awarding attorneys' fees. We

reverse the portion of the order finding that Galleria had waived its right to damages from the Pub's breach of contract.  On remand, the circuit court shall determine the amount of damages due to Galleria for the Pub's breach of the Lease.  Such damages shall include future rents required to be paid under the Lease, but the circuit court is instructed to determine what mitigation of damages, if any, has occurred in this action.  The amount of damages due for the Pub's breach of the Lease shall also be offset by the fair market value of the Pub's converted property which the circuit court determined was $478,946.26.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Clark C. Johnson
Michael T. Leigh
Louisville, Kentucky

BRIEF FOR APPELLEES/CROSS-APPELLANTS:

Mark A. Smedal
Louisville, Kentucky