POPEYE'S FAMOUS FRIED CHICKEN and
CONTINENTAL INS. CO. *v.* Linda WILLIS

CA 82-284                                                    646 S.W.2d 17

Court of Appeals of Arkansas
Opinion delivered February 9, 1983
[Rehearing denied March 9, 1983.]

*Chester C. Lowe, Jr.,* for appellants.

*Donald Frazier,* for appellee.

MELVIN MAYFIELD, Chief Judge. This is an employer's appeal from the Workers' Compensation Commission and the question presented is whether the commission erred in authorizing a claimant to see another doctor at the employer's expense.

It is agreed that the claimant sustained a compensable injury to an elbow in a fall which occurred on November 20, 1980. The employer sent her to a doctor who made x-rays, put her arm in a sling, prescribed "warm soaks, Naprosyn and Tylenol," and released her to go back to work the next day. However, she continued to complain of pain and other

symptoms associated with the elbow and eventually went to see Dr. Kenneth Jones of the Little Rock Orthopedic Clinic. It was stipulated that Dr. Jones was selected by the claimant and that all his bills which has been presented up to the day of the hearing had been paid by the employer.

The hearing before the law judge was held on June 30, 1981. Five letters were introduced pertaining to claimant's treatment by Dr. Jones and his associate, Dr. Millard. One of the letters, dated April 10, 1981, and addressed to claimant's attorney, concluded as follows:

> Today there are no significant findings, other than those previously reported by Dr. Millard and myself. I must admit that at this moment I am at a loss to explain this patient's unusual complaints, with minimal findings. I therefore have recommended that this patient return to your office, with the consideration that you refer her to some other orthopedic office, as it would seem that neither Dr. Millard or myself have anything else to recommend to this patient in the way of treatment.

The only witness to testify at the hearing was the claimant who said her arm had never stopped hurting and that it swells up when she lifts boxes, as she has to do at times in her present job, and if she does very much housework. She described the pain, how she soaked her elbow in hot water, how she took pain medication, and how the elbow "pops" when she moves it.

It was the contention of claimant's attorney that claimant was entitled to further medical treatment and if Dr. Jones had nothing else to offer, the law judge should authorize her to see another doctor. The respondent's attorney contended claimant should not be allowed to change doctors at respondent's expense and it was agreed that claimant would go back to Dr. Jones and that he would be asked to examine her again and make another report. This was done and his report was as follows:

> The above patient returned to the clinic on July 3, 1981, for reevaluation.

She stated that her symptoms are getting worse. Once again, except for tenderness over the lateral aspect of the right elbow joint, there are no significant findings. It may be that surgical exploration of this elbow joint, or even an arthrogram, might be revealing. However, I do not have enough findings to justify this undertaking in this clinic.

Once again, as previously stated, I would recommend that this patient consider consulting another orthopedic office for a second opinion, or perhaps I should say a third opinion as she has seen Dr. Millard as well as myself.

I would again state that I have nothing further to offer this patient in the way of treatment. I therefore once more dismiss her from our medical observation. As to permanent partial disability, I can only estimate as I have done earlier, on the basis of the patient's complaints and not on the findings, a 2.5% partial disability to the right upper extremity.

Upon receipt of the above letter the law judge found that the claimant had shown circumstances justifying a change of physician as provided by Ark. Stat. Ann. § 81-1311, as amended by Section 3 of Act 290 of 1981, and he authorized her to be evaluated by one of the two doctors he named in his order. This decision was approved on appeal to the full commission, although one member dissented and the other two did not agree as to the basis of their approval. One member apparently agreed with the law judge that Ark. Stat. Ann. § 81-1311 applied as amended and one agreed as to the result, but said he thought the section applied as it existed prior to the amendment.

We think the section applies as amended. It should be noted that Act 290 of 1981 contained an emergency clause which made it effective on the date of its approval, March 3, 1981. Although claimant's injury occurred before that date, the hearing before the law judge, his decision, and the decision of the commission, all occurred after the act had become effective. In fact, the act was in effect when Dr. Jones

wrote his letter of April 10, 1981, saying he had nothing else to recommend in the way of treatment and suggesting that claimant's attorney consider referring her to some other orthopedic office. Thus, when the claimant requested the commission to authorize her to see another doctor, the provisions of section 81-1311 as amended by the 1981 act were in effect.

If there is a question of whether the 1981 act applies retroactively, the answer seems clear. In *Aluminum Co. of Amer. v. Neal,* 4 Ark. App. 11, 626 S.W.2d 620 (1982), the contention was made that an amendment to the Workers' Compensation Law should be construed as having a prospective operation and we quoted with approval from *State ex rel. Moose v. Kansas City & Memphis Railway and Bridge Co.,* 117 Ark. 606, 174 S.W. 248 (1914), as follows:

> The strict rule of construction contended for does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. These should . . . be given a retrospective effect whenever such seems to have been the intention of the Legislature.

Section 81-1311 already contained a provision allowing the commission to authorize a claimant to change doctors and section 3 of the 1981 act did not disturb any vested right nor create any new obligation. It merely supplied "a new or more appropriate remedy to enforce an existing right or obligation" and we find that it applies to the issue in this case.

Applying Ark. Stat. Ann. § 81-1311 as amended by the 1981 Act which provides that when the claimant has selected a physician the commission may not order a change of physicians at the employer's expense unless it finds there is a "compelling reason or circumstance justifying a change," and using the rule that we must view the evidence in the light most favorable to the action of the commission, *Clark v. Peabody Testing Service,* 265 Ark. 489, 579 S.W.2d 360 (1979), we think the claimant's testimony that she suffered

disabling pain on a daily basis and the doctor's report that he had no further treatment to offer and that she should consider consulting another orthopedic office, are sufficient to support the commission's decision in this case. And, while the majority of the commission was not in agreement as to the basis of their decision, we will affirm if the decision appealed from is right even if a wrong reason for the decision is given, *Morrison* v. *Lowe,* 274 Ark. 358, 625 S.W.2d 452 (1981); *Mayhew* v. *Loveless,* 1 Ark. App. 69, 613 S.W.2d 118 (1981).

Affirmed.