The Honorable Larry Jegley, Prosecuting Attorney 6th Judicial District 122 South Broadway Little Rock, Arkansas 72201
Dear Mr. Jegley:
This official Attorney General opinion is rendered in response to your recent questions regarding Act 1197 of 1997, and that Act's impact upon the conclusions reached in certain previous Attorney General opinions.
In 1995, this office issued Opinions Nos. 95-223 and 95-259, in which I reached various conclusions regarding the sentencing of habitual offenders. The particular conclusions in those opinions that are pertinent to your questions are the following:
 • Persons convicted and sentenced as habitual offenders under A.C.A. § 5-4-501(c) and (d) who reach the age of 55 and who serve the amount of time that would have made them eligible for parole if they had not been convicted and sentenced as habitual offenders can be eligible for parole under the parole eligibility provisions of A.C.A. § 16-93-1302(f).
 • A.C.A. § 16-93-1302(f) creates an exception for such persons from the portions of A.C.A. § 5-4-501(c) and (d) that would otherwise make such persons ineligible for parole.
 • Such persons are not governed by the provisions of A.C.A. § 16-93-611, which requires that certain offenders serve at least 70% of the terms to which they are sentenced before being eligible for parole, in light of the fact that the provisions of both A.C.A. § 5-4-501 and of A.C.A. § 16-93-1302(f) more specifically address such persons than do the provisions of A.C.A. § 16-93-611.
 • The phrase "eligible for parole" is not synonymous with the phrase "eligible for transfer." The term "parole" is used in A.C.A. § 16-93-611 in its common sense, to refer to release into the community. The term "transfer," by contrast, refers to a variety of alternative punishments, including the possibility of continued incarceration in a community punishment facility, and therefore does not necessarily involve release into the community.
 • "Good time" must be calculated and kept track of for individuals sentenced under A.C.A. § 5-4-501(c) and (d), but it cannot inure to their benefit unless and until the provisions of A.C.A. § 16-93-1302(f) have gone into effect for those persons (i.e., they have reached the age of 55 and have served the amount of time that would be necessary for them to receive parole or transfer if they had not been sentenced under A.C.A. § 5-4-501(c) or (d)). Inmates cannot earn "good time" toward the 70% minimum of A.C.A. § 16-93-611.
 • It is mandatory that defendants whose prior convictions and current crimes fall within the purview of A.C.A. § 5-4-501(c) or (d) be charged as habitual offenders pursuant to those sections.
Act 1197 of 1997 amended the provisions of A.C.A. § 5-4-501 and A.C.A. §16-93-611, as described more specifically below in response to your questions.
In light of the fact that these amendments touch upon the above-described conclusions that were reached in Opinions Nos. 95-223 and 95-259, and in light of certain new issues that are raised by Act 1197, you have presented the following questions:
 (1)(a) Does Act 1197, Section 2 (amending A.C.A. § 16-93-611) change your previous opinion (set forth in Opinion Nos. 95-223 and 95-259) as to which of the parole eligibility laws are applicable to persons charged and convicted under A.C.A. § 5-4-501(c) or (d)?
 (b) To which crimes does the "age 55 parole eligibility law" (A.C.A. § 16-93-1302) now apply?
 (2) Does the 70% parole eligibility law (A.C.A. § 16-93-611) now apply exclusively to persons convicted of the six crimes specifically enumerated in A.C.A. § 16-93-611, as well as to persons charged and sentenced under A.C.A. § 5-4-501(c) and (d) of such enumerated offenses?
 (3)(a) Does the revised wording of Act 1197 of 1997, Section 2, change your opinion as to the meaning of the phrase "eligible for parole" or "eligible for transfer?" (That is, is the legislature now using the terms" parole" and "community punishment transfer" synonymously?)
 (b) Is "good time" now to be calculated, but no "parole" (release into the community) or transfer (with release into the community) carried out until 70% of the sentence is served?
 (4)(a) Should AMCI 9404 be revised to define good time calculation above and below the line for convictions of crimes enumerated in Act 1197, whether or not a person is charged with and convicted of offenses under A.C.A. § 5-4-501(c) or (d)?
 (b) Should definitions of parole and community punishment transfer be given the jury where the instruction is otherwise appropriate?
(c) If so, how should these terms be defined?
 (5) Do the changes made by Act 1197 to A.C.A. § 5-4-501(a) and (b) affect your conclusion that charging under A.C.A. § 5-4-501(c) and (d) is mandatory where prior convictions and current crimes of the offender fall within the purview of those sections?
 (6) In light of the fact that habitual charging is discretionary under A.C.A. § 5-4-501(a) and (b), is there any scenario (using a combination of current charge and prior convictions or guilty pleas) where it would be inappropriate and illegal to charge an offender as a habitual offender under A.C.A. § 5-4-501(a) or (b)? (That is, is there a "loophole" under the current language which would allow a criminal to escape being charged as a habitual offender?)
 (7)(a) Does the deletion of the language "one or more separate and distinct prior occasions" and "two or more separate and distinct prior occasions" in A.C.A. § 5-4-501(c) and (d) cause any constitutional defect in the habitual law (A.C.A. § 5-4-501)?
 (b) Does the fact that a person pleads guilty on one day to multiple crimes present any constitutional problems where the charging prosecutor later counts each of those crimes separately for purposes of determining whether to charge under A.C.A. § 5-4-501(c) or (d)?
 (c) Does it matter under this change of language whether the prior convictions were for crimes charged in one information or in separate informations as long as the defendant pleaded guilty to or was convicted of each crime?
 (d) Are there other considerations why deleting this language would cause a constitutional defect in A.C.A. § 5-4-501, as amended?
 (8)(a) Are there any constitutional problems with Act 1197 or with A.C.A. § 5-4-501, including due process, equal protection, double jeopardy, or other clauses of the U.S. or Arkansas Constitutions?
 (b) If so, what is the effect of such unconstitutionality on this or previous habitual law?
 (9) Although Act 1197 bears no emergency clause, and is thus presumably effective with other general legislation on August 1, 1997, how should the Act's revision to A.C.A. § 5-4-501(b)(2), referring to felonies committed after "June 30, 1997" be interpreted? (Is this a clerical error? Was this intended to be June 30, 1993, as in subsections (a)(1) and (b)(1)? Was this intended to be August 31, 1997, as in subsection (a)(3), perhaps in contemplation of the effective date of general legislation? Or did the legislature literally intend a retroactive effective date, just as stated, of June 30, 1997? If so, is that retroactivity permissible?)
RESPONSE
Question 1(a) — Does Act 1197, Section 2 (amending A.C.A. § 16-93-611)change your previous opinion (set forth in Opinion Nos. 95-223 and95-259) regarding which of the parole eligibility laws are applicable topersons charged and convicted under A.C.A. § 5-4-501(c) or (d)?
It is my opinion that the provisions of Act 1197, Section 2, which amend A.C.A. § 16-93-611, do not change the conclusions reached in Opinions Nos. 95-223 and 95-259 regarding which of the parole eligibility laws are applicable to persons charged and convicted under A.C.A. § 5-4-501(c) or (d).
Section 2 of Act 1197 states as follows (added language is underlined):
SECTION 2. Arkansas Code 16-93-611 is amended to read as follows:
"§ 16-93-611. Class Y felonies.
 Notwithstanding any law allowing the award of meritorious good time or any other law to the contrary, any person who is found guilty of or who pleads guilty or nolo contendere to murder in the first degree, § 5-10-102, kidnapping, Class Y felonies, § 5-11-102, aggravated robbery, § 5-12-103, rape, § 5-14-103, and causing a catastrophe, § 5-38-202(a), shall not be eligible for parole or community punishment transfer until the person serves seventy percent (70%) of the term of imprisonment, including a sentence prescribed under Arkansas Code § 5-4-501, to which the person is sentenced."
Acts 1997, No. 1197, § 2.
In Opinion No. 95-223, I concluded that the previous version of A.C.A. §16-93-611, which did not include the phrase "including a sentence prescribed under Arkansas Code § 5-4-501," did not apply to persons convicted and sentenced under A.C.A. § 5-4-501(c) or (d). I based that conclusion on the fact that the provisions of A.C.A. § 5-4-501(c) and (d) are more specific to the subject matter under consideration, and therefore must take precedence, under the Arkansas Supreme Court's holdings. See Op. No. 95-223 at 6. I also noted that statutes which appear to conflict must be reconciled if possible. Id. at 4.
I now conclude that the addition of this phrase ("including a sentence prescribed under Arkansas Code § 5-4-501"), to A.C.A. § 16-93-611 by Act 119, does not have the effect of making the statute applicable to persons convicted and sentenced under A.C.A. § 5-4-501(c) or (d). I reach this conclusion on the basis of the same reasoning that supported my conclusion in Opinion No. 95-223.
The provisions of A.C.A. § 16-93-611 and the provisions of A.C.A. §5-4-501(c) and (d) appear, on the surface, to be in direct conflict with one another. Whereas A.C.A. § 16-93-611 allows for eligibility for parole or transfer after a defendant has served 70% of the imposed sentence, the provisions of A.C.A. § 5-4-501(c) and (d) disallow eligibility for parole or transfer altogether.[1] As I pointed out in Opinion No. 95-223, the Arkansas Supreme Court has stated that where two statutes appear to conflict, they must be interpreted, to the extent possible, so as to give effect to both provisions. See, e.g., Kansas City Southern Ry. Co. v.Pledger, 301 Ark. 564, 785 S.W.2d 462 (1990); Love v. Hill, 297 Ark. 96,759 S.W.2d 550 (1988); Bolden v. Watt, 290 Ark. 343, 719 S.W.2d 428
(1986).
It is possible to reconcile A.C.A. § 16-93-611 with A.C.A. § 5-4-501(c) and (d) by reading the phrase "including a sentence prescribed under Arkansas Code § 5-4-501," in A.C.A. § 16-93-611, to refer only to sentences prescribed under A.C.A. § 5-4-501(a) and (b). This interpretation is bolstered by the fact that under the language of A.C.A. § 5-4-501 itself, persons convicted and sentenced under A.C.A. §5-4-501(a) or (b) can, in fact, be eligible for parole or transfer, whereas those convicted and sentenced under A.C.A. § 5-4-501(c) or (d) cannot be.[2] It is more reasonable, in my opinion, to conclude that the legislature, in amending A.C.A. § 16-93-611, intended to impose a stricter standard of eligibility for parole or transfer upon those offenders who can be eligible, than to conclude that it intended to grant eligibility to the most violent offenders who have not previously been eligible.
I also conclude, as I did in Opinion No. 95-223, that A.C.A. § 16-93-611
does not apply to persons convicted and sentenced under A.C.A. §5-4-501(c) or (d), on the grounds that A.C.A. § 16-93-611, even as amended by Act 1197, is more general than the provisions of A.C.A. §5-4-501(c) and (d). As explained in Opinion No. 95-223, A.C.A. §§5-4-501(c) and (d) are more specific in that those sections specify convictions of particular offenses under the particular circumstances of the existence of previous convictions of other particular offenses, whereas A.C.A. § 16-93-611 is broader, having a more general applicability to convictions of a variety of offenses, even absent the existence of previous convictions, and can, in fact, apply to offenders who have committed only one felony. I again conclude that A.C.A. §16-93-611 is not applicable to persons such as habitual offenders whose sentences are more specifically governed by stricter provisions. Under the holdings of the Arkansas courts, the more specific statutes must govern. See, e.g., Sunbelt Courier v. McCartney, 31 Ark. App. 8,786 S.W.2d 121 (1990), aff'd 303 Ark. 522, 798 S.W.2d 92 (1990); Thomas v.Easley, 277 Ark. 222, 640 S.W.2d 797 (1982).
For the foregoing reasons, it is my opinion that amendments enacted by Act 1197 of 1997 do not affect the conclusions I reached in Opinions Nos. 95-223 and 95-259 regarding which of the parole eligibility laws are applicable to persons charged and convicted under A.C.A. § 5-4-501(c) or (d).
Question 1(b) — If so, to what crimes does the "age 55 parole eligibilitylaw" (A.C.A. § 16-93-1302) now apply?
Because I have opined in response to Question 1(a) that Act 1197 of 1997 does not change my opinion as to the applicability of the parole eligibility laws, it is my opinion that the "age 55 parole eligibility law" (A.C.A. § 16-93-1302(f)) applies in the same manner as discussed in Opinion No. 95-259. I opined therein that A.C.A. § 16-93-1302(f) applies to persons who: (1) were sentenced under A.C.A. § 5-4-501(c) or (d); (2) reach age 55; and (3) serve for the amount of time that would have been required in order for them to obtain parole or transfer eligibility if they had not been sentenced under sections (c) or (d). See Op. No. 95-259 at 8. The particular crimes for which persons may be sentenced under A.C.A. § 5-4-501(c) are enumerated in § (c)(2), and those for which persons may be sentenced under A.C.A. § 5-4-501(d) are enumerated in § (d)(2).
Question 2 — Does the 70% parole eligibility law (A.C.A. § 16-93-611) nowapply exclusively to persons convicted of the six crimes specificallyenumerated in A.C.A. § 16-93-611, as well as to persons charged andsentenced under A.C.A. § 5-4-501(c) and (d) of such enumerated offenses?
It is my opinion, as explained more fully in response to Question 1(a), that the 70% parole eligibility law (A.C.A. § 16-93-611) does not apply to persons charged and sentenced under A.C.A. § 5-4-501(c) or (d). As amended, it now applies, in my opinion, to persons convicted of the crimes enumerated therein, including persons convicted of those crimes and sentenced under A.C.A. § 5-4-501(a) or (b).
Question 3(a) — Does the revised wording of Act 1197 of 1997, Section 2,change your opinion as to the meaning of the phrase "eligible for parole"or "eligible for transfer?" (That is, is the legislature now using theterms "parole" and "community punishment transfer" synonymously?)
It is my opinion that Act 1197's revision of the wording of A.C.A. §16-93-611 to include the phrase "eligible for . . . community punishment transfer" (in addition to the phrase "eligible for parole")[3] does not reflect an intent to use the phrase synonymously with the phrase "eligible for parole." Indeed, the addition of this phrase reflects the opposite intent.
In Opinion No. 95-223, I opined that the phrase "eligible for parole" is not synonymous with the phrase "eligible for transfer." See Op. No. 95-223 at 7 et seq. The term "parole," I opined, refers to actual release into the community, and by including the phrase "eligible for parole" in A.C.A. § 16-93-611, while excluding the phrase "eligible for transfer," the legislature was expressing an intent to preclude release into the community prior to the completion of 70% of the sentence, rather than an intent to preclude transfer to other alternative forms of punishment prior to the completion of 70% of the sentence. It is this conclusion that is changed by the addition of the new language to A.C.A. § 16-93-611, rather than a change in the meaning of the phrases.
If the legislature were using the two phrases synonymously, the addition of the new phrase would have created a redundancy. I do not believe that was the legislative intent. Rather, it is my opinion that the legislature added the phrase "eligible for . . . community punishment transfer" (in addition to the phrase "eligible for parole") in order to express an intent to preclude both release into the community and transfer to alternative forms of punishment, prior to service of 70% of the sentence. That is, the amendment, in my opinion, was designed to express the intent that offenders governed by A.C.A. § 16-93-611 serve at least 70% of their sentences before either being released into the communityor being transferred to any other alternative form of punishment.
Question 3(b) — Is "good time" now to be calculated, but no "parole"(release into the community) or transfer (with release into thecommunity) carried out until 70% of the sentence is served?
It is my opinion that Act 1197 of 1997 has no effect upon the conclusions reached in Opinion No. 95-223 regarding the calculation and use of "good time." It continues to be my opinion that:
 (1) "Good time" must be calculated and kept track of for individuals sentenced under A.C.A. § 5-4-501(c) and (d), but that it cannot inure to their benefit unless and until the provisions of A.C.A. § 16-93-1302(f) have gone into effect for those persons (i.e., unless and until they have reached the age of 55 and have served the amount of time that would be necessary for them to receive parole or transfer if they had not been sentenced under A.C.A. § 5-4-501(c) or (d)); and
 (2) Inmates cannot earn "good time" toward the 70% minimum of A.C.A. § 16-93-611.
My conclusions regarding the calculation and use of "good time" are based upon the reasoning that was set forth in support of the same conclusions in Opinion No. 95-223. See pp. 5-6, 9.
Question 4(a) — Should AMCI 9404 be revised to define good timecalculation above and below the line for convictions of crimes enumeratedin Act 1197, whether or not a person is charged with and convicted ofoffenses under A.C.A. § 5-4-501(c) or (d)?
I am unable to answer this question, because it delves into matters that are beyond the scope of an Attorney General's opinion. While, as a general principle, the law requires that jury instructions accurately and fairly state the law, see, e.g., Heritage v. State, 326 Ark. 839,936 S.W.2d 439 (1996), the issue you have raised is one that is more appropriately addressed by the policy-making bodies who have a direct interest in and responsibility for seeing that officially-available jury instructions meet this requirement of the law. I would therefore suggest that you direct this question to the appropriate arm of the legislative branch of government.
Question 4(b) — Should definitions of parole and community punishmenttransfer be given the jury where the instruction is otherwiseappropriate?
This question, like Question 4(a), raises issues that are beyond the scope of an Attorney General's opinion, and gives rise to concerns that are more appropriately within the province of either the judicial or the legislative branch of government.
The manner in which any particular jury should be instructed is a matter that is within the province of the court, see Sweeney v. State,35 Ark. 215 (1880), and therefore must be decided on a case-by-case basis by each court, having considered the particulars that have transpired during the presentation of evidence. See Davis v. State,155 Ark. 245, 244 S.W. 750
(1922).
The issue of whether the contents of jury instructions as a general matter appropriately and accurately reflect the law is a concern of policy-making bodies, as I have previously noted.
For this reason, I am unable to opine in response to this question.
Question 4(c) — If so, how should these terms be defined?
See response to Question 4(a).
Question 5 — Do the changes made by Act 1197 to A.C.A. § 5-4-501(a) and(b) affect your conclusion that charging under A.C.A. § 5-4-501(c) and(d) is mandatory where prior convictions and current crimes of theoffender fall within the purview of those sections?
It is my opinion that the changes made by Act 1197 of 1997 to A.C.A. §5-4-501(a) and (b) do not change the conclusion reached in Opinion No.95-259 that charging under A.C.A. § 5-4-501(c) and (d) is mandatory where prior convictions and current crimes of the offender fall within the purview of those sections.
The conclusion reached in Opinion No. 95-259 addressed the situation in which both the offender's current crimes and previous convictions fell within the purview of either section (c) or (d).
The changes brought about by Act 1197 do not address that situation. Rather, they address the situation in which the offender's current crime falls within either section (c) or (d), but the previous convictions do not. The amendment therefore does not change my opinion regarding this matter.
Accordingly, it continues to be my opinion that when both an offender's current crime and previous convictions fall within the purview of section (c) or (d), it is mandatory that the offender be charged as a habitual offender pursuant to those sections.
Question 6 — In light of the fact that habitual charging is discretionaryunder A.C.A. § 5-4-501(a) and (b), is there any scenario (using acombination of current charge and prior convictions or guilty pleas)where it would be inappropriate and illegal to charge an offender as ahabitual offender under A.C.A. § 5-4-501(a) or (b)? (That is, is there a"loophole" under the current language which would allow a criminal toescape being charged as a habitual offender?)
It is my opinion that the language of A.C.A. § 5-4-501, as amended by Act 1197 of 1997, is clear and unambiguous as to the various scenarios under which offenders are to be charged and sentenced as habitual offenders. That language speaks for itself. Offenders can avoid being charged as habitual offenders if their particular combination of current crimes and prior convictions do not meet the plainly stated criteria set forth in A.C.A. § 5-4-501 for such charges. On the other hand, they should not be able to avoid such charges if their combination of current crimes and prior convictions does fall within those criteria. The myriad of possible fact situations to which this plain language may potentially be applied, misapplied, or attempted to be applied or misapplied, is beyond the scope of an Attorney General's opinion. I will note, however, that the 1997 amendments appear to have been constructed for the purpose of closing loopholes such as you have described that may have existed under the former version of A.C.A. § 5-4-501.
Question 7(a) — Does the deletion of the language "one or more separateand distinct prior occasions" and "two or more separate and distinctprior occasions" in A.C.A. § 5-4-501(c) and (d) cause any constitutionaldefect in the habitual law (A.C.A. § 5-4-501)?
It is my opinion that the deletion of this language does not give rise to any facially-apparent constitutional concerns.
The portions of Act 1197 of 1997 to which your question refers state as follows (deleted language is noted):
SECTION 1. Arkansas Code 5-4-501 is amended to read as follows:
* * *
 (c)(1) A defendant who is convicted of a serious felony involving violence enumerated in subdivision (c)(2) of this section and who has previously been convicted on one (1) or more separate and distinct prior occasions of one (1) or more of the serious felonies involving violence enumerated in subdivision (c)(2) of this section shall be sentenced to imprisonment, without eligibility except under § 16-93-1302 of parole or community punishment transfer, for a term of not less than forty (40) years nor more than eighty (80) years, or life.
* * *
 (d)(1) A defendant who is convicted of a felony involving violence enumerated in subdivision (d)(2) of this section and who has previously been convicted on two (2) or more separate and distinct prior occasions of one (1) of two (2) or more of the felonies involving violence enumerated in subdivision (d)(2) of this section shall be sentenced to an extended term of imprisonment, without eligibility except under § 16-93-1302 for parole or community punishment transfer, as follows:
* * *
Acts 1997, No. 1197, § 1.
Presumably, any concern over the deletion of this language would be based upon an interest in assuring that previous convictions arising out of the same criminal incident were not improperly "double-counted" so as to inappropriately enhance the defendant's punishment.
Both the legislature and the Arkansas Supreme Court have addressed the issue of separate criminal convictions arising out of the same criminal incident. This issue is the subject of A.C.A. § 5-1-110(a), which states in pertinent part:
5-1-110. Conduct constituting more than one offense-Prosecution.
 (a) When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense if:
* * *
 (5) The conduct constitutes an offense defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.
A.C.A. § 5-1-110(a)(5).
The Arkansas Supreme Court has specifically set forth a test for determining whether offenses should be deemed separate, or should constitute part of a continuing course of conduct. In Ricks v. State,327 Ark. 513, ___ S.W.2d ___ (1997), the court stated:
 When the impulse is single, only one charge lies, no matter how long the act may continue. If there are successive impulses, even though all unite in a common course of action, separate charges lie, and the test is whether the prohibition is of the individual acts or the course of action they constitute. If the former, each act is punished separately; if the latter, there can be but one penalty.
Ricks v. State, 327 Ark. at 515, citing Rowe v. State, 271 Ark. 20,607 S.W.2d 657 (1980), cert. denied 450 U.S. 1043 (1981); Britt v. State,261 Ark. 488, 549 S.W.2d 84 (1977).
The Ricks court also pointed out:
 Examples we have given of continuing offenses include offenses such as nonsupport and promotion of prostitution. See Rolark v. State, 299 Ark. 299, 772 S.W.2d 588 (1989).
Ricks, 327 Ark. at 515.
The Arkansas courts have also specifically held that offenses committed during a single episode can constitute separate offenses for purposes of applying the habitual offender statutes. See, e.g., Glick v. State,286 Ark. 133, 689 S.W.2d 559 (1985); Wesson v. State. 5 Ark. App. 154,633 S.W.2d 713 (1982); Swaite v. State, 272 Ark. 128, 612 S.W.2d 307 (1981).
The newly constituted language of A.C.A. § 5-4-501, quoted above (without the phrases "on one or more separate and distinct prior occasions" and "on two or more separate and distinct prior occasions"), still specifies the requirement of separate convictions. This specification, in my opinion, alleviates — at least on a facial basis — constitutional concern regarding double-counting of offenses.
Question 7(b) — Does the fact that a person pleads guilty on one day tomultiple crimes present any constitutional problems where the chargingprosecutor later counts each of those crimes separately for purposes ofdetermining whether to charge under A.C.A. § 5-4-501(c) or (d)?
For the reasons stated in response to Question 7(a), it is my opinion that the situation that you have described does not present any facially-evident constitutional problems.
Question 7(c) — Does it matter under this change of language whether theprior convictions were for crimes charged in one information or inseparate informations as long as the defendant pleaded guilty to or wasconvicted of each crime?
It is my opinion that Act 1197's change in the language of A.C.A. §5-4-501 (deleting the phrases "on one or more separate and distinct prior occasions" and "on two or more separate and distinct prior occasions") does not change the law with regard to the significance of whether previous convictions were for crimes charged in one or in separate informations.
The Arkansas Supreme Court has held that for purposes of applying the habitual offender statutes, it is sufficient to prove, by any evidence that satisfies the trier of fact beyond a reasonable doubt, the existence of the requisite number of prior convictions. See, e.g., Hill v. State,275 Ark. 71, 628 S.W.2d 284, cert. denied, 459 U.S. 882 (1982); Ply v.State, 270 Ark. 554, 606 S.W.2d 556 (1980). It is not necessary to re-prove the validity of the previous convictions. Hill v. State, supra.
Although it is conceivable that under some circumstances, the charging of various crimes in one information could give rise to a claim, in challenge to that information, that the offenses were not separate, such single-information charging does not give rise to a challenge to a later information that relies upon separate convictions actually obtained under the earlier information. In other words, a challenge to the later information is not the proper forum for claiming that the previous offenses should have been charged separately. If the defendant incurred separate convictions for the separate crimes charged in the previous single information, those separate convictions are presumed to have been validly imposed as separate convictions, for purposes of their use in applying the habitual offender statutes. Brown v. State, 264 Ark. 248,570 S.W.2d 251 (1978).
Because the new language of A.C.A. § 5-4-501 still requires the existence of separate previous offenses, it is still consistent with prevailing law regarding the use of such offenses for purposes of applying the habitual offender statutes. The manner in which the separate previous offenses were originally charged should be irrelevant to their use in applying the provisions of A.C.A. § 5-4-501.
Question 7(d) — Are there other considerations why deleting this languagewould cause a constitutional defect in A.C.A. § 5-4-501, as amended?
I am aware of no constitutional defects in A.C.A. § 5-4-501 that are brought about by the deletion of the phrases "on one or more separate and distinct prior occasions" and "on two or more separate and distinct prior occasions."
Question 8(a) — Are there any constitutional problems with Act 1197 orwith A.C.A. § 5-4-501, including due process, equal protection, doublejeopardy, or other clauses of the U.S. or Arkansas Constitutions?
Any law that creates a classification and that touches upon liberty interests could conceivably be the basis for a lawsuit alleging violations of constitutional principles.
I should note, however, that statutes are entitled to a presumption of constitutionality, and doubts must be resolved in favor of a finding of constitutionality. Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770 (1991).
The validity of any such claim would turn largely upon the facts and evidence presented. For this reason, I cannot render an opinion as to a determination of the ultimate constitutionality of this provision, but given the presumption of constitutionality, it is my opinion that the state would be able to present a sound defense of the statute.
Question 8(b) — If so, what is the effect of such unconstitutionality onthis or previous habitual law?
It is my opinion that if any portion of Act 1197 of 1997 were held to be unconstitutional, the practical impact of such a holding would vary depending upon the circumstances of each case in which the holding were an issue.
The Arkansas Supreme Court has unequivocally held that when a law is declared unconstitutional, it must be treated as though it had never been passed; it is considered to have been void ab initio; it is a nullity and is inoperative; rights cannot be built up under it; and it protects no one who has acted under it. See, e.g., Huffman v. Dawkins, 273 Ark. 520,622 S.W.2d 159 (1981); Morgan v. Cook, 211 Ark. 755, 202 S.W.2d 355
(1947); Cochran v. Cobb, 43 Ark. 180 (1884).
However, because the applicability of such a holding to each inmate's case will depend upon the evidence that is adduced to establish such applicability, and because the outcome of each case will vary depending upon each court's finding of applicability in each such case, I cannot opine as to the general impact of such a holding.
Question 9 — Although Act 1197 bears no emergency clause, and is thuspresumably effective with other general legislation on August 1, 1997, howshould the Act's revision to A.C.A. § 5-4-501(b)(2), referring tofelonies committed after "June 30, 1997" be interpreted? (Is this aclerical error? Was this intended to be June 30, 1993, as in subsections(a)(1) and (b)(1)? Was this intended to be August 31, 1997, as insubsection (a)(3), perhaps in contemplation of the effective date ofgeneral legislation? Or did the legislature literally intend aretroactive effective date, just as stated, of June 30, 1997? If so, isthat retroactivity permissible?)
It is unclear why Act 1197 refers to felonies committed after "August 31, 1997" in its revisions to A.C.A. § 5-4-501(a)(2) and (3), but refers to felonies committed after "June 30, 1997" in its revisions to A.C.A. §5-4-501(b)(2) and (3). It appears that this difference may have been a clerical error.
Nevertheless, even if the reference to "June 30, 1997" is interpreted to have been the intent of the legislature, it is my opinion that this reference does not create a retroactivity problem.
Although there is a presumption in Arkansas law against the retroactivity of statutes in the absence of an expressed legislative intent to the contrary, see, e.g., Ark. Dept. of Human Services v. Walters,315 Ark. 204, 866 S.W.2d 823 (1993), this presumption does not apply when the statute in question is procedural, rather than substantive, in nature.Forrest City Mach. Works v. Aderhold, 273 Ark. 33, 616 S.W.2d 720
(1981). Statutory provisions are considered to be procedural in nature if they operate only to supply a new or more appropriate remedy to enforce an existing right or obligation; they are considered to be substantive if they operate to disturb vested rights or create new obligations. Harrisonv. Matthews, 235 Ark. 915, 362 S.W.2d 704 (1962). Nevertheless, the Arkansas courts have allowed statutes to operate retroactively, even when they have had a substantive effect, if the "operative event" occurred after the effective date of the act.
The courts appear to be likely to consider the act of the enforcement (or the occurrence of the event that leads to the seeking of enforcement) to be the "operative event" triggering application of a statute, rather than the occurrence that necessitated enforcement. See, e.g., Forrest CityMach. Works, supra; Popeye's Famous Fried Chicken v. Willis,7 Ark. App. 167, 646 S.W.2d 17 (1983).
In Forrest City Mach. Works, supra, for example, the plaintiff was injured on a piece of machinery manufactured by the defendant. The machinery had been manufactured in 1956. In 1973, the legislature enacted a strict liability statute that governed situations like that involved in the case. The plaintiff's injury occurred after the new statute was enacted. Because the machinery had been manufactured negligently, the act of manufacturing it was the occurrence necessitating enforcement of the statute, but it was not the operative event triggering application of the statute. The plaintiff's injury was the occurrence that led to the seeking of enforcement, and was, therefore, the operative event triggering application of the statute. The court held that the new statute applied, despite the fact that it had been enacted nearly twenty years after the machinery in question had been manufactured. The holding was based in part upon the fact that the injury-the operative event-had occurred after the new law was enacted. The Court stated:
 In General Motors v. Tate, 257 Ark. 347, 516 S.W.2d 602 (1974), we thought it would be unfair to relate back this statute when both the manufacture and the accident took place before the act. However in this present case, the accident took place after the statute was enacted. We deem that to be a distinguishing factor. . . .
Forrest City Mach. Works, 273 Ark. at 42. Thus, although the application of the new law technically had a substantive effect on the defendant, the Court held that its retroactive application was appropriate, largely because it was in effect when the plaintiff sought to enforce it.
Similarly, Popeye's Famous Fried Chicken v. Willis, 7 Ark. App. 167,646 S.W.2d 17 (1983), involved newly enacted legislation. The legislature had passed a new law changing the circumstances under which a workers' compensation claimant could be allowed to change doctors at the employer's expense. The claimant in the case was injured prior to the enactment of the statute. After its enactment, she requested that she be allowed to change doctors at the employer's expense, pursuant to the new statute. The employer argued that the statute should not be applied retroactively, because to apply it would be to impose a substantive obligation upon the employer. The Workers' Compensation Commission authorized the change in doctors, holding that the new law should apply retroactively. On appeal, the Court upheld the decision. In so holding, the Court stated:
 Although claimant's injury occurred before [the effective date of the act], the hearing before the law judge, his decision, and the decision of the commission, all occurred after the act had become effective. . . . Thus, when the claimant requested the commission to authorize her to see another doctor, the provisions of [the act] were in effect.
Popeye's Famous Fried Chicken, 7 Ark. App. at 170-71.
Although the retroactive application of the new law did have a substantive effect, the court held its application to be appropriate, largely because the law was in effect when the claimant sought to enforce it, notwithstanding the fact that it was not in effect when the claimant's injury occurred.
Upon the basis of these holdings, I conclude that the "retroactive" operation of A.C.A. § 5-4-501, as amended by Act 1197 of 1997, is appropriate when the prosecution of the violation in question, and the imposition of sentence both occur after the effective date of the Act — even if the violation itself took place prior to the effective date of the Act. This conclusion, of course, precludes the permissibility of applying the provisions of Act 1197 to cases in which either of these "operative events" took place prior to the effective date of the Act.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Except under A.C.A. § 16-96-1302(f), as discussed in response to Question 1(b).
[2] Except under A.C.A. § 16-96-1302(f).
[3] The amended form of A.C.A. § 16-93-611 is quoted in full in response to Question 1(a).